**RECORD NO. 22-1995**

---

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

---

ANTONIO SMITH,
*Plaintiff-Appellant*,

v.

CARLOS DEL TORO,
Acting Secretary,
U.S Department of the Navy,
*Defendant-Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

---

**APPELLANT'S CORRECTED OPENING BRIEF**

Dated: November 28, 2022

Ellen K. Renaud, V.A. Bar # 47326
Alan Lescht & Associates, P.C.
1825 K Street, NW, Suite 750
Washington, D.C. 20006
Tel. (202) 852-8483
Ellen.Renaud@leschtlaw.com

*Counsel for Appellant*

## CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1, Appellant Antonio Smith, makes the following disclosure stating that the following are all interested persons known to him:

1. Antonio Smith, appellant, who is a natural person.
2. Ellen K. Renaud, attorney for the appellant, who is a natural person.
3. Yuri S. Fuchs, attorney for the appellee, who is a natural person.
4. Carlos Del Toro, Secretary, United States Department of the Navy, appellee, who is a natural person.

## TABLE OF CONTENTS

Corporate Disclosure Statement ....................i

Table of Contents ....................ii

Table of Authorities ....................iv

Statement of Jurisdiction ....................1

Issues Presented for Review ....................1

Statement of the Case ....................2

Statement of the Facts ....................2

I. Background ....................2
II. Defendant marginalized Mr. Smith because of his race ....................3
III. Mr. Smith was qualified for promotion to Deputy Director ....................3
IV. Col. Hittle selected a white employee with no protected activity to serve as long-term Acting Deputy Director ....................4
V. The selection process for the permanent Deputy Director position ....................5
VI. Col. Hittle rejected Mr. Smith's application for promotion one month after Mr. Smith reported him for discrimination ....................6
VII. Col. Hittle admitted he felt uncomfortable working with Mr. Smith because of his protected activity ....................6

Summary of Argument ....................7

Argument ....................9

I. Legal Standard of Review ....................9
II. A reasonable jury could conclude that Col. Hittle rejected Mr. Smith for promotion based on his race and/or discrimination complaints ....................11
A. The district court improperly viewed Col. Hittle's admission of retaliatory fear in the light most favorable to Defendant ....................11
B. The district court erred by viewing Col. Hittle's admitted fear and discomfort with Mr. Smith's complaints in isolation from other evidence of pretext ....................15
1. Close Temporal Proximity ....................16

2. The district court failed to consider Mr. Smith's argument that a reasonable jury could find Col. Hittle's claim that he relied on decades-old experience to choose Mr. Sobieranski over Mr. Smith unworthy of credence .......17

3. The District Court improperly ignored Col. Hittle's destruction of all contemporaneous evidence of his rationale .......18

C. The District Court improperly weighed evidence of Col. Hittle's credibility in isolation .......19

1. Col. Hittle provided false and contradictory testimony about the nature and length of Col. Sobieranski's detail .......19

2. The District Court improperly ignored Col. Hittle's misrepresentation of Mr. Sobieranski's seniority to justify his selection decision .......24

3. The District Court failed to consider that a reasonable jury could infer that Col. Hittle's attempts to feign ignorance of Mr. Smith's impressive qualifications was evidence of retaliation .......25

4. The District Court failed to consider, as part of the aggregate of evidence of retaliation, that Col. Hittle falsely denied knowledge of Mr. Smith's recent protected activity .......27

Conclusion .......29

Statement Requesting Oral Argument .......30

Certificate of Service .......30

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby,*
Inc., 477 U.S. (1986) ........................................................................10, 11

*Celotex Corp. v. Catrett,*
477 U.S. (1986)......................................................................................10, 11

*Dennis v. Columbia Colleton Med. Ctr., Inc.,*
290 F.3d 639 (4th Cir.2002) ....................................................................27-28

*E.E.O.C. v. Sears Roebuck & Co.,*
243 F.3d (4th Cir. 2001) .........................................................................16

*First Nat'l Bank v. Cities Serv. Co.,*
391 U.S. (1968)......................................................................................11

*Foster v. Univ. of Maryland-E. Shore,*
787 F.3d (4th Cir. 2015) .........................................................................14, 16, 17

*Holcomb v. Powell,*
433 F.3d (D.C. Cir. 2006).......................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. (1986)......................................................................................10

*Mayorga v. Merdon,*
928 F.3d (D.C. Cir. 2019).......................................................................22

*Merritt v. Old Dominion Freight Line, Inc.,*
601 F.3d (4th Cir. 2010) .........................................................................14

*Paroline v. Unisys Corp.,*
879 F.2d 100 (4th Cir. 1989), 900 F.2d 27 (4th Cir. 1990)..............................24

*Poller v. Columbia Broadcasting System, Inc.*,

386 U.S. (1986)............................................................................................10

*Reeves v. Sanderson Plumbing Prod., Inc.*,

530 U.S. (2000)............................................................................................16, 22, 29

*Roe v. Doe*,

28 F.3d (4th Cir. 1994) ..................................................................................9, 10

*Santelli v. Electro-Motive, a Div. of Gen. Motors Corp.*,

136 F. Supp. 2d (N.D. Ill. 2001)...................................................................14

*Vodusek v. Bayliner Marine Corp.*,

71 F.3d (4th Cir. 1995) ..................................................................................18

**STATEMENT OF JURISDICTION**

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. §§ 1291, 1294.

**ISSUES PRESENTED FOR REVIEW**

1. Does the Civil Rights Act of 1965 prohibit an employer from refusing to promote an employee because the supervisor feels uncomfortable around him due to his prior complaint of race discrimination?

2. Based on the decisionmaker's destruction of evidence, false statements about the Appellant's qualifications, and testimony that he had to "walk on eggshells" around the Appellant because he filed an EEO complaint, could a reasonable jury conclude that the decisionmaker selected a white employee with no protected activity instead of Appellant?

3. Did the district court err in granting summary judgment based on a factual finding that the selectee and the Appellant were relatively equally qualified where the Appellant did not rely on a qualifications-based argument to establish pretext, but instead relied on the decisionmaker's admission that he felt uncomfortable working with the Appellant because of his EEO complaint and because the decisionmaker's credibility wavered on material facts?

4. May a reasonable jury find that a manager was motivated by an employee's

discrimination complaint based on the manager's testimony that he had to "walk on eggshells" around the employee because of his discrimination complaint?

## STATEMENT OF THE CASE

Antonio Smith Laird brought this civil action against the United States Department of the Navy in the United States District Court for the Eastern District of Virginia on December 17, 2021, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* JA 4–11. Defendant filed a motion for summary judgment on May 13, 2022. JA 12–13. Mr. Smith filed an opposition thereto on May 31, 2022, and Defendant filed a reply on June 6, 2022. JA 132–56; JA 270-91. An oral hearing was held on the issue of summary judgment, and the district court issued a memorandum opinion and order granting summary judgment for the Defendant Navy on September 1, 2022. JA 315-35. On September 15, 2022, Mr. Smith filed a timely notice of appeal to this Court of the district court's grant of summary judgment to for the Defendant. JA 337-38.

## STATEMENT OF THE FACTS

### I. Background.

Antonio Smith, an African American man, served in a supervisory capacity as the Operations Branch Head or Operations Officer at the Training & Education Capabilities Division ("TECD") in the United States Marine Corps from September

2009 to August 2019. JA 6 (¶ 10); JA 71; JA 157–60. TECD provides resources and generates requirements for virtual and constructive training devices and simulations that military members of the Marine Corps must complete. JA 161-259.

Mr. Smith provided overall management of current and future operations of TECD and oversaw work product produced by TECD's Operations Branch. *Id*. At the administrative hearing in this matter, Mr. Smith testified that he briefed three-star level officers and served as acting deputy director for periods of his tenure as Operations Officer. JA 163-164. He also described his supervisory responsibilities. Mr. Smith directed the branches to provide their input into a major assignment that he supervised and consolidated, and he assigned tasks to the other branch heads—including Edward Sobieranski, a white man whom Defendant later promoted over Mr. Smith into Mr. Smith's supervisor's role. JA 166–67.

## II. Defendant marginalized Mr. Smith because of his race.

Throughout Mr. Smith's tenure, Defendant marginalized him because of his race. The conduct was so pervasive that Mr. Smith filed EEO complaints in June 2015 and September 2016 alleging discrimination. In the September 2016 complaint, Mr. Smith reported the Director of TECD, Colonel ("Col.") Patrick Hittle, for discrimination.

## III. Mr. Smith was qualified for promotion to Deputy Director.

Mr. Smith's qualifications for the Deputy Director position are impeccable.

Mr. Smith successfully served as the Operations Branch Head/Operations Officer for Defendant's Training & Education Capabilities Division ("TECD") for a decade. In this role, Mr. Smith served as the resource sponsor and requirements generator for both virtual and constructive training devices and simulations and range training areas. He also directed, managed, supervised, and conducted technical research in support of simulations and range area management. There were only two TECD positions senior to Mr. Smith's: the Deputy Director and the Director. Mr. Smith served as Acting Deputy Director multiple times prior to 2017.

## IV. Col. Hittle selected a white employee with no history of protected activity to serve as long-term Acting Deputy Director.

In July 2017, Deputy Director Terry Bennington retired. Despite Mr. Smith's excellent qualifications and experience serving as Acting Deputy Director, Col. Hittle passed him over and detailed Edward Sobieranski, a white employee who was a step below Mr. Smith in the TECD hierarchy, into the Acting Deputy Director position. Although OPM regulations limited the detail to 120 days, Col. Hittle allowed Mr. Sobieranski to act in this position for nearly six months, including *during* the selection process for the permanent position. JA 55. As Mr. Sobieranski readily admits, this was valuable experience for him. In fact, he highlighted his experience in the acting position on his resume when he applied for the permanent Deputy Director role. Surely, any reasonable and honest person would acknowledge that serving in the position for six months gave Mr. Sobieranski a leg up on the

competition. But Col. Hittle denied that it gave him any advantage. JA 132–33. Col. Hittle tried to minimize the importance of Mr. Sobieranski's long stint as Acting Deputy Director and dissembled about when and how he gave Mr. Sobieranski that role. *Id.*

## V. Col. Hittle made the final decision in the selection process for the permanent Deputy Director position.

In November 2017, Defendant opened the position of permanent Deputy Director for applications. The selection process involved three phases: first, resume review and ranking; second, panel interviews; and third, interviews with Col. Hittle, who was the deciding official. Mr. Smith and Mr. Sobieranski both applied. The resume review panel ranked Mr. Smith's resume as superior overall to Mr. Sobieranski's resume. Mr. Sobieranski's resume showcased the new skills he had gained as Acting Deputy Director. On the strength of that experience, the review panel ranked Mr. Sobieranski's and Mr. Smith's resumes the same for experience despite the fact that Mr. Smith had seven more years of experience than Mr. Sobieranski. JA 303 (recognizing that Mr. Smith had been serving in the organization since 2009); JA 262-63 (showing that Mr. Sobieranski joined the organization in 2016, 7 years after Mr. Smith). Both men advanced to panel interviews along with 12 other applicants. After panel interviews, Defendant scheduled Mr. Smith, Mr. Sobieranski, and one other candidate for interviews with Col. Hittle. Col. Hittle conducted those interviews in January 2018.

**VI. Col. Hittle rejected Mr. Smith's application for promotion one month after Mr. Smith complained to him of discrimination.**

In the midst of the application process, Col. Hittle assigned contractors away from Mr. Smith's branch without consulting or telling him. On December 20, 2017, Mr. Smith complained in an email to Col. Hittle that he felt Col. Hittle was marginalizing him and discriminating against him. JA 157–60 (Smith email stating that he felt Col. Hittle was "purposely marginalizing" and "discriminating" against him.). Col. Hittle refused Mr. Smith's request to "sit down and talk" about issues between them. *Id.* In reply to Mr. Smith's email, Col. Hittle noted that his wording "indicates this is a complaint on your part." *Id.* About one month later, on January 29, 2018, Col. Hittle told Mr. Smith that he had selected Mr. Sobieranski over him for the permanent Deputy Director job. JA 124–26.

**VII. Col. Hittle admitted he felt uncomfortable working with Mr. Smith because of his protected activity.**

When Mr. Smith complained of discrimination in an email to Col. Hittle on December 20, 2017, Col. Hittle reacted by distancing himself from Mr. Smith. At the EEOC hearing in this matter, Col. Hittle admitted that he was upset with Mr. Smith for naming him in an EEO complaint and felt uncomfortable working with him. JA 246; JA 248. Col. Hittle testified that he felt like he had to "walk around on eggshells" with Mr. Smith because he had filed an EEO complaint. JA 240; JA 246. Col. Hittle explained that he "felt that [he] was being drug into the conversation

about the prior EEO action from [Mr. Smith]" but that "[he] didn't want to be involved in that" and that Col. Hittle's "goal was not to take people from [Mr. Smith]" but to "get the work done and put the resources in the right place." JA 118–19. Col. Hittle added that he was uncomfortable around Mr. Smith because he had to be "overly sensitive" to Mr. Smith's concerns while Hittle otherwise "did everything in [his] power to be [] honest with [Mr. Smith] and straightforward." JA 119. Col. Hittle also lamented that he "had never been the subject of an EEO complaint" and being named in one by Mr. Smith made him "[feel] like [he] had failed in something." JA 121. Col. Hittle further testified that having to "walk on eggshells" with his Deputy Director would have been uncomfortable. JA 248. Because a reasonable jury could find that this discomfort—caused by Mr. Smith's protected activity—is the reason that Col. Hittle selected a white employee junior to Mr. Smith as his Deputy Director (a role for which Mr. Smith was next in line) summary judgment is not appropriate.

## SUMMARY OF ARGUMENT

The district court erred in finding that no reasonable jury could find that Col. Hittle rejected Mr. Smith for promotion based on his race and his protected activity. Mr. Smith presented evidence that Col. Hittle said he was uncomfortable working with him because he named him as a discriminating official in his EEO complaint. Col. Hittle testified that he felt he had to "walk on eggshells" around Mr. Smith

because of his discrimination complaints. He also admitted that he did not want a Deputy Directory with whom he felt the need to be overly cautious. Thus, a reasonable jury could easily draw the inference that Col. Hittle did not select Mr. Smith as Deputy Director because he did not want to have to "walk on eggshells" with Mr. Smith as his right-hand man. The district court erroneously discounted this evidence because Col. Hittle admitted this after—rather than during—the selection process. However, no such contemporaneous statement is required to support a jury inference of motive. Col. Hittle's testimony about his feelings about Mr. Smith and his protected activity is relevant and, indeed, powerful evidence of his retaliatory motive at the time of his selection decision.

The district court also improperly rendered its judgment because it found that Mr. Smith was not significantly more qualified than Mr. Sobieranski for the promotion. The error in that ruling is that Mr. Smith was not relying on a qualifications comparison to establish pretext in this case.

The district court also disaggregated the evidence of Col. Hittle's retaliatory motive. In declining to find retaliation, the district court discussed only Col. Hittle's admission that he felt uncomfortable working with Mr. Smith because of his discrimination complaints and that he did not want to have a Deputy with whom he felt uncomfortable. The district court ignored the close temporal proximity and other evidence of pretext, including Col. Hittle's false and shifting testimony about

material issues in the case. For instance, Col. Hittle acknowledged that he directly supervised Mr. Smith and that they talked about work on a daily basis, yet he testified that he did not know the nature of Mr. Smith's job. In justifying his selection decision, Col. Hittle claimed that Mr. Sobieranski was at a higher level in the organization than he actually was. A reasonable jury could conclude that Col. Hittle lied in an attempt to hide the fact that he did not select Mr. Smith because he is African American and had filed a discrimination complaint.

In addition, Col. Hittle destroyed his notes of interviews for the Deputy Director position, even though he already knew that Mr. Smith believed that Col. Hittle discriminated against him. Defendant also failed to produce Col. Hittle's contemporaneous memorandum to his supervisor justifying his decision. Aside from those that warrant an adverse inference (and all reasonable inferences must be drawn in favor of Mr. Smith at this stage), the facts that remain could—and should—lead a reasonable jury to conclude that Col. Hittle did not select Mr. Smith for the Deputy Director position because of unlawful discrimination and retaliation. As such, this Court should reverse the district court's grant of summary judgment and remand this case for a trial by jury.

## ARGUMENT

### I. Legal Standard of Review.

This Court reviews a district court's grant of summary judgment *de novo*. *Roe*

*v. Doe*, 28 F.3d 404, 406–07 (4th Cir. 1994). The standard for granting summary judgment is met if upon review of all the pleadings, depositions, affidavits and other documents submitted by the parties, the Court finds that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In evaluating the evidence, the Court must view all evidence and draw any factual inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Similarly, in *de novo* review, this Court must draw all reasonable inferences in favor of the appellant. *Roe*, 28 F.3d at 406–07 (*citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

If the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, the motion for summary judgment cannot be granted. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The Supreme Court has emphasized that the evidence presented must not be weighed by a judge before trial. *Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Thus, even if the weight of the evidence favors the moving party, a court is not authorized to grant summary judgment. *See Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962) ("It is only when the

witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.").

It is worth noting that the party seeking summary judgment bears the responsibility of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The non-moving party's demonstration of a genuine issue of material fact is not a high bar:

> [T]he issue of material fact required by 56(c). . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a judge or jury to resolve the parties' differing versions of the truth at trial.

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). Summary judgement cannot be granted "if reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51.

## II. A reasonable jury could conclude that Col. Hittle rejected Mr. Smith for promotion based on his race and/or discrimination complaints.

### A. The district court improperly viewed Col. Hittle's admission of retaliatory motive in the light most favorable to Defendant.

Col. Hittle testified multiple times that he felt he had to "walk on eggshells" around Mr. Smith *because of* his EEO complaints. JA 240; JA 246. He further testified that he was uncomfortable around Mr. Smith because he had never before been named in an EEO complaint. JA 248. Moreover, Col. Hittle admitted that he

would have to work closely with his Deputy Director and would not feel comfortable working with a Deputy Director around whom he had to walk on eggshells. *Id.* This evidence raises an inference that Col. Hittle harbored a retaliatory fear of working with Mr. Smith and was unreasonably concerned that Mr. Smith would file subsequent discrimination complaints. Yet the district court concluded that an "independent" selection process outweighed Col. Hittle's admissions about his feelings about Mr. Smith and his EEO complaints. JA 332. The court stated that Col. Hittle's statements did not show pretext because "the selection process involved multiple rounds of independent review" before the question reached Col. Hittle. *Id*. And yes, it is undisputed that the panel interviewers were independent decisionmakers and that both Mr. Smith and Mr. Sobieranski were qualified for the position. But that is beside the point. Mr. Smith does not take issue with the panel interviewers' determination; he alleges that Col. Hittle's final selection was unlawful. The question is what motivated Col. Hittle to choose Mr. Sobieranski over Mr. Smith.

"A plaintiff attacking a qualifications-based explanation is expressly *not* limited to comparing [his] qualifications against those of the successful applicant; [he] may seek to expose other flaws in the employer's explanation, including, *inter alia*, showing the employer has misstated [his] qualifications" or other indicia of pretext. *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (emphasis in

original). The issue in this case is whether Col. Hittle, the *final* decisionmaker in this case, chose Mr. Sobieranski over Mr. Smith because he felt uncomfortable working with an African American man who accused him of discrimination. Here, Mr. Smith did not need to present evidence indicating that Col. Hittle felt uncomfortable working with him because he filed an EEO complaint. Col. Hittle admitted this fact—he testified that he was uncomfortable working with Mr. Smith because of his protected activity and, further, that he did not want a Deputy Director with whom he felt uncomfortable. Based on Col. Hittle's admission, a reasonable jury may find that but for Mr. Smith's complaints of discrimination, Col. Hittle would have promoted him.

To be sure, Col. Hittle never said, "I did not promote Mr. Smith because he named me in an EEO complaint," and Smith has not argued that he had direct evidence of discrimination. But Col. Hittle's multiple statements explaining that he was uncomfortable working with Mr. Smith because Mr. Smith accused him of discrimination and Col. Hittle's admission that he did not want a deputy with whom he felt uncomfortable constitute circumstantial evidence of retaliatory animus. They should be considered along with the other indicia of retaliation in the case, *i.e.*, temporal proximity and questionable credibility.

A reasonable jury could take Col. Hittle at his word: he felt he had to walk on eggshells around Mr. Smith because Mr. Smith had personally accused him of

discrimination and, further, Col. Hittle did not want to have to walk on eggshells around the person he hired as his deputy. JA 247-49. In short, a reasonable jury could conclude that Col. Hittle did not promote Mr. Smith because Mr. Smith had filed a discrimination complaint before and could do so again.

This Court has previously ruled that a decisionmaker's expression of discomfort about a person based on their protected class does support an inference of discrimination and should be considered in combination with evidence of pretext and evidence supporting a *prima facie* case. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 301 (4th Cir. 2010) (holding that evidence that plaintiff "was told that she was not hired become some were uncomfortable with women having the job," *inter alia*, raised an inference of sex discrimination). When considered in the aggregate, the evidence supports a reasonable conclusion that Col. Hittle's EEO-induced eggshells are why he did not select Mr. Smith for the Deputy Director position. *See Santelli v. Electro-Motive, a Div. of Gen. Motors Corp.*, 136 F. Supp. 2d 922, 936 (N.D. Ill. 2001) ("jury's deliberation of these delicate questions of motive and intent, regardless of their ultimate answer, will be a more reliable guideline than this Court's review of the dry papers submitted thus far, particularly given that a jury will be able to examine [the decisionmaker's] demeanor and gauge his veracity when he attempts to explain or deny those words at trial.").

But the district court discounted Col. Hittle's testimony about his discomfort

working with Mr. Smith because there were no similar statements made "at any point during the selection process." JA 334. Even putting aside Col. Hittle's intentional destruction of his contemporaneous notes about the selection, the fact that Col. Hittle testified about his motive after—rather than at the time of the decision—does not render his admission irrelevant. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (considering decisionmaker's "statement of retaliatory animus" at her deposition as part of the evidence creating a jury question).

### B. The district court erred by viewing Col. Hittle's admitted fear and discomfort with Mr. Smith's complaints in isolation from other evidence of pretext.

Col. Hittle all but admitted during his testimony that he did not want Mr. Smith working as his Deputy Director because Mr. Smith's EEO complaint accusing him [Hittle] of discriminating against him [Smith] made Col. Hittle uncomfortable working with him. While this is already compelling evidence of a retaliatory motive, Mr. Smith presented the district court with other evidence of retaliation. Specifically, Col. Hittle rejected Mr. Smith for promotion just one month after Mr. Smith emailed him about discrimination; Col. Hittle curiously cited the selectee's decades-old experience with an obsolete technology as a prime reason for selecting him; and Col. Hittle destroyed all evidence of his contemporaneous thoughts about the selection, which he feared Mr. Smith would claim was retaliatory. In addition, Mr. Smith presented evidence from which a reasonable jury could find that Col.

Hittle did not honestly describe the candidates' qualifications. The district court, however, inexplicably declined to examine this evidence in the context of Mr. Smith's retaliation claim. *See* JA 329-35. In the six pages the court devoted to Mr. Smith's retaliation claim, there was no mention of the evidence of pretext nor the short amount of time between Mr. Smith's complaint and Col. Hittle's decision.

**1. Close temporal proximity.**

In this case, the district court ignored the evidence supporting Mr. Smith's *prima facie* case when ruling that no reasonable jury could conclude that Col. Hittle's decision was based on Mr. Smith's race or his discrimination complaints. This Court has made clear that when ruling on summary judgment in an employment discrimination case, courts must consider "the totality of the circumstances," including evidence supporting a *prima facie* case. *See E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001) (commenting on the plaintiff's "strong prima facie case" of discrimination). Such disregard of material evidence in the non-moving party's favor is reversible error. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (upon a motion for summary judgment, "the court should review the record as a whole").

The Fourth Circuit has made clear that an inference of causation is raised where an adverse employment action is taken shortly after an employee's follow-up protected activity—not simply the initial filing of a formal complaint or civil action.

*Foster*, 787 F.3d at 253. In *Foster*, the Court rejected as "contrary to law" the employer's argument that the Court "may only look to [employee's] initial complaint of harassment and not her subsequent complaints of retaliation" in calculating temporal proximity." *Id.* (*citing Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (finding temporal proximity where an employee was demoted six weeks after a hearing on his EEO complaint)).

In this case, Mr. Smith complained to Col. Hittle about ongoing discrimination and retaliation on December 20, 2017; about one month later, Col. Hittle rejected Mr. Smith's application for promotion. *See* JA 157–60 (12/20/17 Email from Smith to Hittle) ("I believe your actions are because I have an EEO complaint against TECOM that includes you" and requesting to "be allowed to work free of marginalization, discrimination, and other adverse actions."); JA 124–26 (1/29/18 Memo for Record indicating Hittle's non-selection of Smith). This Circuit has found that a month between a reminder of allegations of discrimination (an EEOC hearing) and an adverse action was sufficiently close in time to raise an inference of retaliatory motive. *See Foster*, 787 F.3d at 253. Accordingly, the month-long period between Mr. Smith's protected email and Col. Hittle's decision constitutes sufficient temporal proximity to establish causation at this stage of the litigation.

**2. The district court failed to consider Mr. Smith's argument**

**that a reasonable jury could find Col. Hittle's claim that he relied on decades-old experience to choose Mr. Sobieranski over Mr. Smith unworthy of credence.**

Col. Hittle testified that simulations experience was important for the Deputy Director position. JA 187 ("An understanding of simulations and experience with simulations would be very valuable."). When asked to identify Mr. Sobieranski's relevant experience, Col. Hittle mentioned Mr. Sobieranski's participation in the development of the ISMT in the "'80s or '90s." JA 224. Col. Hittle's claim—that his 2017 decision was based on Mr. Sobieranski's work with an obsolete technological system 30 years prior—strains credulity. Moreover, the record contains evidence that the ISMT is not integrated into the live virtual constructive training environment and therefore has no bearing on the live virtual constructive training education that Col. Hittle claims was critical to the work of the Deputy Director. JA 259. *But see* JA 69–76 (Col. Hittle claiming that he needed his Deputy Director to integrate the ranges and simulations programs).

**3. The district court improperly ignored Col. Hittle's destruction of all contemporaneous evidence of his selection rationale.**

In this case, Col. Hittle testified that he took notes of his impressions during the job interviews and wrote a memo to his superior where he "outlined why [Mr. Sobieranski] was the best candidate to MG Iiams." JA 69–76. Nevertheless, Col. Hittle admitted that he "shredded everything," in violation of the Navy's document

retention policies, as well as his obligation to preserve evidence. JA 192. A jury is entitled to draw the inference that this crucial evidence, which Col. Hittle intentionally destroyed, would have exposed facts unfavorable to Defendant, *i.e.*, at worst, admission of retaliatory and discriminatory motive, at best, inconsistent reasons for his selection decision. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("Even the mere failure, without more, to produce evidence that naturally would have elucidated a fact at issue permits an inference that 'the party fears [to produce the evidence]; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.'"). Although a jury is entitled to consider Col. Hittle's contention that his actions were ignorant and unintentional, a jury could reject this explanation given that Col. Hittle knew that Mr. Smith had a pending discrimination complaint against him and Col. Hittle's admitted fear about Mr. Smith filing subsequent complaints (making the importance of these notes obvious to Col. Hittle). A reasonable jury could find that Col. Hittle destroyed the notes because they were unfavorable to him.

In addition, Defendant has offered no explanation for its failure to produce the justification memorandum that Col. Hittle said he submitted to Major General Iiams. Thus, while Mr. Smith is not required to show that Col. Hittle acted in bad faith by destroying the evidence, a reasonable jury could conclude that he did. *Cf. id.* ("We

reject the argument that bad faith is an essential element of the spoliation rule").

### C. The district court improperly weighed evidence of Col. Hittle's credibility in isolation.

#### 1. Col. Hittle provided false and contradictory testimony about the nature and length of Mr. Sobieranski's detail

The district court acknowledges Mr. Smith's argument that Col. Hittle made false statements to bolster Mr. Sobieranski's qualifications but does not explain why Col. Hittle's false statements about material facts does not impeach his credibility. Nor does the district court explain why this, in combination with his destruction of his notes and his discomfort working with someone because he named him as a discriminating official, does not raise an inference of pretext. Rather, the court only reiterates its impression that the decision "resulted from an open, structured process involving multiple levels of review and evaluation." JA 325. Again, Mr. Smith does not dispute that the first two levels of consideration appropriately determined that both Mr. Smith and Mr. Sobieranski were qualified for the position. The issue in this case is whether Col. Hittle, the ultimate decisionmaker, selected Mr. Sobieranski because he *honestly* believed him to be the best qualified individual for the position or because he did not want a deputy around whom he had to walk on eggshells. On this question, the fact that Col. Hittle fabricated Mr. Sobieranski's start date in the Acting Deputy Director position indicates his desire to conceal the advantage he gave him in the selection process.

A reasonable jury could find that Col. Hittle's actions in appointing Mr. Sobieranski to the Acting Deputy Director position further raise an inference of retaliation in the selection for the permanent position.

Col. Hittle acted with an unlawful motive in rejecting Mr. Smith for promotion based on the fact that he allowed Mr. Sobieranski to serve in the Acting Deputy Director position for such a long time and that he did not approach Mr. Smith about serving as Acting Deputy Director before February 2018, despite the fact that Mr. Smith had been called on to serve as acting deputy chief multiple times by the prior Director, JA 163-64. Instead, he tapped Mr. Sobieranski—who had no previous experience as the Acting Deputy Director—for the role. And while federal regulations limit a non-competitive detail to 120 days, Col. Hittle allowed Mr. Sobieranski to occupy the temporary role for more than six months. In fact, Col. Hittle permitted Mr. Sobieranski to serve—officially or unofficially—as the Acting Deputy during the entire selection process for the permanent position, which Col. Hittle testified went on for "seven or eight months." JA 205.

Even more incredibly, Col. Hittle testified that detailing Mr. Sobieranski to the Acting Deputy Director position during the selection process did not afford him any advantage over Mr. Smith. JA 227-28. For six months, Col. Hittle allowed Mr. Sobieranski to serve as his right-hand man but claims that this gave him no advantage in the selection process for the permanent position. Not only is Col.

Hittle's contention incredible on its face, but the record evidence also shows that the detail gave Mr. Sobieranski a significant advantage in being selected for the permanent position. Mr. Sobieranski certainly thought so: he devoted most of the first page of his resume to describing his new role as Acting Deputy Director. JA 262-69. And the resume reviewers agreed: they gave Mr. Sobieranski a higher ranking in the subcategory of "experience" specifically because of his detail in the Acting Deputy position. Mr. Sobieranski even admitted that serving in the Acting Deputy Director role provided him "insight" and "an advantage to get more skills." JA 256-57. While the resume review panel ranked Mr. Sobieranski's resume as inferior to Mr. Smith's in other aspects, a reasonable jury could infer that the resume panel only rated Mr. Sobieranski's "experience" as comparable to Mr. Smith's because Col. Hittle placed Mr. Sobieranski in the Acting Deputy Director role for the latter half of 2017. Regardless, a jury could find Col. Hittle's claim—that Mr. Sobieranski's six-month detail as Acting Deputy did not give him an advantage in being selected for the permanent position—so outlandish that it could have only been made to cover up the unlawful favoritism Col. Hittle showed a white employee who did not complain about discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) (recognizing "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'").

A jury could also decide that Col. Hittle attempted to downplay the tremendous advantage he gave Mr. Sobieranski (as well as his violation of the OPM regulation limiting details to 120 days) by falsely claiming that he appointed Mr. Sobieranski as Acting Deputy in October 2017, rather than three months earlier, in July 2017. *See Mayorga v. Merdon*, 928 F.3d 84, 92 (D.C. Cir. 2019) (evidence that a manager misstated the candidates qualifications created issue of fact as to whether the manager "honestly believed" that the candidates had those qualifications, precluding summary judgment). It is clear from the record that Col. Hittle appointed Mr. Sobieranski as the Acting Deputy Director in July 2017 and allowed him to serve in that position until January 29, 2018, when he permanently promoted him over Mr. Smith. *See* JA 262-69 (Sobieranski Resume, specifying that he began serving as Acting Deputy Director on August 1, 2017); JA 261 (1/25/17 Memo for Record noting that Col. Hittle announced during weekly branch head meeting that Sobieranski would be the interim deputy director following Mr. Bennington's retirement). Mr. Sobieranski himself testified that his detail began in July 2017 and that he put in paperwork for the detail to be official at that time. JA 253-54. Yet Col. Hittle told the EEO investigator that in July 2017, Mr. Sobieranski "was not officially the deputy, neither permanently nor temporarily detailed to the job," and that "*[as of July 2017, Sobieranski] was not doing the functions of the deputy position prior to October*." JA 69–76 (emphasis added). Col. Hittle claimed that

"[f]rom July to October 2017, I didn't have a deputy." *Id.* This statement is demonstrably false. In addition, at the EEO hearing, Col. Hittle was bafflingly unable to specify if or when he detailed Mr. Sobieranski to the Acting Deputy Director position. He testified that "we built the package to temporarily detail Mr. Sobieranski in August [2017]," and that because the detail was only supposed to last 120 days, he began to consider Mr. Smith for the detail in October 2017. JA 203-04. Col. Hittle went on to say that since Mr. Sobieranski's 120 days would be up in October, he decided to give Mr. Smith a chance at the detail in October or November 2017, JA 204, or maybe December or January, JA 206. Regardless, Col. Hittle never offered the detail to Mr. Smith until February 2018, and he permanently promoted Mr. Sobieranski over him a month after Mr. Smith's most recent protected activity. The district court should have deferred to a jury to determine whether Col. Hittle's prevarication and dissembling on the critical issue of providing an obvious advantage to the white applicant with no prior EEO activity is evidence of retaliatory motive in rejecting Mr. Smith's application for promotion. *See Paroline v. Unisys Corp.*, 879 F.2d 100, 109 (4th Cir. 1989), *opinion vacated in part on reh'g,* 900 F.2d 27 (4th Cir. 1990) ("Questions of intent are quintessentially ones for the fact finder under most circumstances").

**2. The district court improperly ignored Col. Hittle's misrepresentation of Mr. Sobieranski's seniority to justify his selection decision.**

Mr. Smith argued below that Col. Hittle's attempts to falsely elevate Mr. Sobieranski's organizational level to support his decision to promote him over Mr. Smith was evidence of retaliation. As with other evidence of pretext and motive, however, the district court did not consider this argument or the supporting evidence as part of its analysis of Mr. Smith's retaliation claim. *See* JA 329-35. Col. Hittle falsely testified that Mr. Smith was not organizationally higher than Mr. Sobieranski before the promotion decision. On the contrary, the record demonstrates that before Col. Hittle promoted him, Mr. Sobieranski was a Deputy Branch Manager, reporting to a Branch Head who, in turn, reported to the Deputy Director. JA 195. On the other hand, Mr. Smith was a Branch Head who reported directly to the Deputy Director. JA 260. Thus, Mr. Smith was one organizational level above Mr. Sobieranski in the chain of command. *Id.* (Defendant's Organizational Chart). Jeffrey Williams, a co-worker in the Division, confirmed the hierarchy:

> Mr. Sobieranski worked for the ranges branch, and he worked for a section within the ranges branch. Therefore, his visibility, everything else that was going on with simulations, the V&V, the validation accreditation program that we have -- there was a number of other functions going on that he wouldn't have visibility of serving in the capacity that he was during that time. Unlike Mr. Smith, who, again, would be the No. 3 person within the division, helping oversee the entire operations of everything going on before the mission.

JA 181.

**3. The district court failed to consider that a reasonable jury**

**could infer that Col. Hittle's attempts to feign ignorance of Mr. Smith's impressive qualifications was evidence of retaliation.**

As with all of Mr. Smith's evidence of pretext, the district court did not address whether Col. Hittle's claim that he was unaware of Mr. Smith's job and qualifications—in order to minimize them—raised an inference of retaliation. In his declaration during the EEO investigation, Col. Hittle stated that he worked "very closely with [Mr. Smith]," "talked to him daily on specific issues and we could always talk about work" and "always felt we could talk, share ideas, and his opinions mattered." JA 69–76. Col. Hittle even called Mr. Smith "the force that kept everyone focused on strategic goals" and noted that Mr. Smith's branch was "an essential point that holds the group all together." *Id.* Yet at the administrative hearing, Col. Hittle claimed that he did not know Mr. Smith's experience or even what he did in his job. JA 202 ("I struggled, at times, to understand what he really did do."). A reasonable jury could find Col. Hittle's testimony was false and designed to cover up his retaliatory motive, especially where Col. Hittle directly supervised Mr. Smith for nearly three years and already admitted that they communicated about work daily. JA 184. More specifically, a jury could find that Col. Hittle's incredible claim that he did not know what Mr. Smith did was designed to cover up the fact that Mr. Smith, as head of the Operations Branch, "typically overs[aw] the entire division and all of its functions with every other branch below

that," and was otherwise exceptionally qualified for the Deputy Director position. JA 181 (Williams); *see also Id.* ("Mr. Smith . . . would be the No. 3 person within the division, helping oversee the entire operations of everything going on before the mission.").

At the hearing, Col. Hittle retracted his prior testimony that Mr. Smith was "the force that kept everyone focused" and that his branch was "an essential point that holds the group all together," and claimed he was just being "generous" when he said that. JA 221. Col. Hittle even wavered on whether he actually made the statement at all. JA 221-22 ("I *may* have said essential.") (emphasis added). However, when Col. Hittle began his testimony at the hearing, he admitted that the roles of the Deputy Director and the Operations Branch Head overlapped. He noted that "*the deputy director typically handled day-to-day oversight of financial processes, administrative work, facilitated the happenings of the division across the branches.*" JA 185 (emphasis added). And Col. Hittle acknowledged that, as Operations Branch Manager, Mr. Smith pulled together data from across branches to create a coherent response to requests for information necessitating communication across branches and a beneficial knowledge of other branches, JA 216, JA 218, and that Mr. Smith acted as a liaison between Col. Hittle and other branch heads, JA 220. Thus, Col. Hittle's own testimony contradicts his incredible claim that he did not know what Mr. Smith did in his job and further reveals a cogent

reason for his false claim—to hide the fact that Mr. Smith's experience as the Operations Branch Head made him well qualified for the Deputy Director position. Such inconsistent testimony about facts material to his decision support a finding of retaliation. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 (4th Cir.2002) (noting "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.") (internal quotation omitted).

**4. The district court failed to consider, as part of the aggregate of evidence of retaliation, that Col. Hittle falsely denied knowledge of Mr. Smith's recent protected activity.**

In his memorandum opposing summary judgment, Mr. Smith marshalled evidence from which a reasonable jury could find that Col. Hittle falsely denied that Mr. Smith complained that he felt marginalized. Further, Mr. Smith argued, a jury could conclude that Col. Hittle was trying to cover up his retaliatory motive by concealing an additional complaint by Mr. Smith. The record is clear that on December 20, 2017, Mr. Smith sent Col. Hittle an email stating that he felt marginalized:

> I ask that we sit down and talk. I am not trying to be difficult, but *I feel that you are purposely marginalizing me* with actions like the one you're proposing below . . . I just ask that I be allowed to work free of *marginalization, discrimination, and other adverse actions*.

JA 157–60 (emphasis added). Moreover, Col. Hittle emailed a response,

acknowledging Mr. Smith's email and that he interpreted it as a complaint. *Id.* When confronted about the email at the administrative hearing, Col. Hittle confirmed that he recalled Mr. Smith raising concerns about discrimination and bias. JA 209.

However, Col. Hittle tried to conceal his knowledge of Mr. Smith's complaint when the administrative judge later questioned him about his efforts to address the alleged discrimination. In response to the administrative judge's direct question, Col. Hittle testified, under oath, that Mr. Smith did *not* tell him he felt marginalized:

> Judge Woodham: From the time that you returned in October of 2017 through the date of your selection decision, did you take any steps to address the concerns of Mr. Smith that he was being marginalized?
>
> Col. Hittle: I didn't take any steps to do anything, Your Honor, because *I didn't hear from him that he was being marginalized.*

JA 238 (emphasis added). Col. Hittle's knowledge of Mr. Smith's protected activity is a material fact, and a reasonable jury could conclude that Col. Hittle falsely denied knowledge of Mr. Smith's complaint to hide his retaliatory animus. *See Reeves*, 530 U.S. at 147 (recognizing "the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'").

## CONCLUSION

Because a reasonable jury could conclude that Col. Hittle preferred to promote

a white applicant with no history of protected activity to serve as his right hand because he was uncomfortable working with a black applicant who had accused him of race discrimination, summary judgment should be vacated, and this case remanded for a jury trial on the merits.

**REQUEST FOR ORAL ARGUMENT**

Appellant respectfully requests oral argument.

Date: November 28, 2022

Respectfully submitted,

/s/ *Ellen K. Renaud*

Ellen K. Renaud, V.A. Bar # 47326
Alan Lescht & Associates, P.C.
1825 K Street, NW Suite 750
Washington, D.C. 20006
Tel. (202) 852-8483
Ellen.Renaud@leschtlaw.com

*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

I certify that the foregoing Appellant's Opening Brief was served upon Appellee by the court's electronic notification system on November 21, 2022 to its attorney of record.

/s/ *Ellen K. Renaud*
Ellen K. Renaud