# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 22-1995

## ANTONIO SMITH,

*Plaintiff-Appellant*,

v.

## CARLOS DEL TORO, ACTING SECRETARY OF THE NAVY, U.S. DEPARTMENT OF THE NAVY

*Defendant-Appellee*.

On appeal from the U.S. District Court for the Eastern District of Virginia, Case No. 1:21-cv-1406-MSN-IDD

BRIEF OF DEFENDANT-APPELLEE

JESSICA D. ABER
United States Attorney

YURI S. FUCHS
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:      (703) 299-3872
Fax:     (703) 299-3983
Email:   yuri.fuchs@usdoj.gov

*Counsel for Defendant-Appellee*

Date: December 21, 2022

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ................................................................... 1

STATEMENT OF THE ISSUE ....................................................................... 1

STATEMENT OF THE CASE ........................................................................ 1

   I. Factual Background ............................................................................ 1

      A. Plaintiff's Employment History and EEO Complaints. ............................ 2

      B. The Selection Decision at Issue .................................................... 4

      C. Plaintiff's EEO Proceedings ....................................................... 7

   II. Procedural History ........................................................................... 9

      A. Events Leading up to Summary Judgment Decision. ............................. 9

      B. The District Court's Summary Judgment Decision. ............................. 11

SUMMARY OF THE ARGUMENT ......................................................... 15

STANDARD OF REVIEW .................................................................... 18

ARGUMENT ................................................................................. 20

   I. THE DISTRICT COURT CORRECTLY ENTERED
      SUMMARY JUDGMENT IN FAVOR OF DEFENDANT
      ON PLAINTIFF'S NON-SELECTION CLAIMS. ..................................... 20

      A. The District Court Correctly Concluded that Plaintiff
         Was Not Demonstrably Superior to Sobieranski. ............................. 24

B. The District Court Correctly Concluded that There
Was No Inconsistency in Hittle's Decision to Select
Sobieranski Over Plaintiff. .............................................................26

C. The District Court Correctly Concluded that Plaintiff
Did Not Establish any Inference of Discriminatory and
or Retaliatory Animus. ..................................................................29

II. PLAINTIFF'S REMAINING ARGUMENTS ON APPEAL
ARE IMMATERIAL TO THE PRETEXT INQUIRY ...................................34

A. Plaintiff's Arguments on Temporal Proximity Are
Immaterial to Pretext and Fundamentally Misread the
District Court's Opinion. ..............................................................36

B. The District Court Squarely Addressed Plaintiff's
Argument that Hittle Destroyed Evidence as well as Its
Relevance to Pretext. ....................................................................38

C. Sobieranski's Tenure as Acting Deputy Director Is
Immaterial to Pretext. ..................................................................40

D. Hittle's Testimony Regarding Sobieranski's
Organizational Level Is Immaterial to Pretext. .........................42

E. Hittle's December 2019 EEO Testimony Regarding
Plaintiff's Qualifications Is Immaterial to His February
2018 Selection Decision. ................................................................43

F. Hittle's Recollection of a December 2017 Email at a
December 2019 Hearing Is Immaterial to His February
2018 Selection Decision. ................................................................45

CONCLUSION .........................................................................................48

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Trs. of the Univ. of N.C.-Wilmington*,
 640 F.3d 550 (4th Cir. 2011) .................................................................28

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .............................................................................19

*Anderson v. Westinghouse Savannah River Co.*,
 406 F.3d 248 (4th Cir. 2005) ................................................. 18, 31, 35

*Annett v. Univ. of Kan.*,
 371 F.3d 1233 (10th Cir. 2004) ...........................................................37

*Babb v. Wilkie*,
 140 S. Ct. 1168 (2020) ........................................................... 22, 23, 30

*Beale v. Hardy*,
 769 F.2d 213 (4th Cir. 1985) ........................................................ 39, 41

*Bonds v. Leavitt*,
 629 F.3d 369 (4th Cir. 2011) ...............................................................20

*Coleman v. Md. Ct. of Appeals*,
 626 F.3d 187 (4th Cir. 2010) ...............................................................36

*DeJarnette v. Corning, Inc.*,
 133 F.3d 293 (4th Cir. 1998).......................................... 22, 27, 28

*Dennis v. Columbia Colleton Med. Ctr., Inc.*,
 290 F.3d 639 (4th Cir. 2002) ...............................................................45

*Evans v. Techs. Applications & Serv. Co.*,
 80 F.3d 954 (4th Cir. 1996) .................................................................21

*Fed. Ins. Co. v. Ward*,
 166 F. App'x 24 (4th Cir. 2006) ..........................................................20

*First Nat'l Bank v. Cities Serv. Co.*,
 391 U.S. 253 (1968) .............................................................................19

*Foster v. Univ. of Md.- Eastern Shore*,
    787 F.3d 243 (4th Cir. 2015) ........................................................ 22, 33

*Harris v. Mayor & City Council of Balt.*,
    429 F. App'x 195 (4th Cir. 2011)............................................................25

*Heiko v. Columbo Sav. Bank, F.S.B.*,
    434 F.3d 249 (4th Cir. 2006) ........................................................ 21, 25

*Huff v. Buttigieg*,
    42 F.4th 638 (7th Cir. 2022) .................................................................23

*Hux v. City of Newport News, Va.*,
    451 F.3d 311 (4th Cir. 2006) ........................................................ 35, 48

*Jiminez v. Mary Washington Coll.*,
    57 F.3d 369 (4th Cir. 1995) ...................................................................22

*Jones v. UnitedHealth Grp., Inc.*,
    802 F. App'x 780 (4th Cir. 2020)...........................................................37

*Karpel v. Inova Health Sys. Servs.*,
    134 F.3d 1222 (4th Cir. 1998) ...............................................................37

*Matias v. Elon Univ.*,
    780 F. App'x 28 (4th Cir. 2019) ............................................................21

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................... 20, 21

*Merritt v. Old Dominion Freight Line, Inc.*,
    601 F.3d 289 (4th Cir. 2010) ........................................................ 32, 33

*Othentec Ltd. v. Phelan*,
    526 F.3d 135 (4th Cir. 2008) .................................................................19

*Poller v. Columbia Broad. Sys., Inc.*,
    368 U.S. 464 (1962) ...............................................................................19

*Santelli v. Electro-Motive, a Div. of Gen. Motors Corp.*,
    136 F. Supp. 2d 922 (N.D. Ill. 2001)....................................................34

*Silvestri v. Gen. Motors Corp.*,
   271 F.3d 583 (4th Cir. 2001) ................................................................40

*Smith v. Univ. of N.C.*,
   632 F.2d 316 (4th Cir. 1980) ...............................................................28

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) .............................................................................22

*Sylvia Dev. Corp. v. Calvert City.*,
   48 F.3d 810 (4th Cir. 1995) .................................................................19

*Tex. Dep't of Cmty. Affs. v. Burdine*,
   450 U.S. 248 (1981) ........................................................................ 20, 21

*Tonkyro v. Sec'y, Dep't of Veterans Affs.*,
   995 F.3d 828 (11th Cir. 2021) .............................................................23

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) .............................................................................22

*Vaughn v. Danzig*,
   18 F. App'x 122 (4th Cir. 2001) ..........................................................39

*Villa v. CavaMezze Grill, LLC*,
   858 F.3d 896 (4th Cir. 2017) .......................................................... 22, 38

*Vodusek v. Bayliner Marine Corp.*,
   71 F.3d 148 (4th Cir. 1995), ................................................................40

**Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

Age Discrimination in Employment Act,
   29 U.S.C. § 633a(a) ....................................................................... 22, 23

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*............. 1, 9, 23

**Rules**

Fed. R. Civ. P. 56(a).............................................................................19

Local Rule 28(f) .................................................................................................1

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1331 to hear Plaintiff-Appellant Antonio Smith's claims, brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and enter final judgment in favor of Defendant-Appellee Carlos Del Toro, Acting Secretary of the Navy. This Court exercises appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court correctly entered summary judgment in favor of Defendant-Appellee on Plaintiff's claims that he was not selected for a position based on his race and in retaliation for protected activity, where Plaintiff and the selected candidate had similar qualifications, the selection decision was based on a multi-level review process, the selecting official had a consistent rationale for the selection decision, and Plaintiff provided no evidence of racial or retaliatory animus.

## STATEMENT OF THE CASE[1]

### I.    Factual Background.

---

[1] Plaintiff's statement cites to the joint appendix in a haphazard fashion, often failing to include any support for the purported factual statements he makes. *See* Local Rule 28(f) ("The statement of the case required by FRAP 28(a)(6) must include a narrative statement of all of the facts necessary for the Court to reach the conclusion which the brief desires with *references to the specific pages in the appendix* that support each of the facts stated.") (emphasis added). For instance, Plaintiff proffers no cites for the factual sections titled "Defendant marginalized

1

## A. Plaintiff's Employment History and EEO Complaints.

Plaintiff-Appellee Antonio Smith, who identifies as African-American and Male, is currently employed by the United States Department of the Navy. JA15, 316. Between September 2009 and August 2019, Plaintiff served as the Operations Branch Head or Operations Officer within the Training & Education Capabilities Division ("TECD") of the United States Marine Corps within the Navy. JA15-16, 316. Within this period, between November 2015 and July 2017, Plaintiff's chain of command at TECD included a direct supervisor named Terry Bennington and a second-level supervisor named Colonel Patrick Hittle, with Hittle continuing as Plaintiff's second-level supervisor until August 2018. JA16, 316-317.[2]

Prior to the 2018 non-selection at issue in his lawsuit, Plaintiff filed an EEO complaint in June 2015 alleging racial discrimination in connection with the hiring process that led to Bennington's selection as the Deputy Director of TECD in April 2015. JA16, 317. Hittle learned of that initial EEO complaint by December 2015. JA16, 317. Following that June 2015 EEO complaint, Plaintiff subsequently filed a

---

Mr. Smith because of his race" or "Mr. Smith was qualified for promotion to deputy director," while making claims in those passages that are unsupported by the record evidence adduced below. Furthermore, a substantial degree of Plaintiff's statement of the case includes irrelevant argument or unsupported assertions that are not properly recited as facts.

[2] Both individuals identified as Caucasian males. JA39, 316.

2

second EEO complaint in September 2016 in which he named both Bennington and Hittle as the discriminating officials. JA16, 317.

Plaintiff would impromptu reference this second EEO complaint in correspondence with Hittle to assert that it was the basis for Hittle's decision to reassign contractors away from the Operations Branch to other parts of TECD. JA16, 62, 318. Specifically on December 20, 2017, Hittle e-mailed Plaintiff that a contractor working for TECD had been assigned to help another employee with a needed task in the TECD, but Hittle noted that he was "[o]pen to comments and thoughts" and "a compelling explanation" as to whether the contractor should stay in the Operations Branch. JA62. In response, Plaintiff did not offer a business explanation for why the contractor should not be moved but abruptly claimed that Hittle was "purposely marginalizing him" and expressed his belief that Hittle's "actions [were] because [Plaintiff] ha[d] an EEO complaint." JA61. In response to this expressed concern, Hittle observed that Plaintiff appeared to be making a complaint against him and encouraged Plaintiff to contact human resources ("HR") if he wanted to address such an issue.  JA61.[3] Hittle also copied the relevant HR individuals for their "awareness." *Id.*

---

[3] Plaintiff asserts that in his email response "Hittle refused [Plaintiff's] request to "sit down and talk" about issues between them, Br. at 6, but the record evidence is to the contrary. Hittle stated in the e-mail that he "[would] be glad to discuss with [Plaintiff]," to which Plaintiff responded by thanking him for his willingness to talk. JA61.

3

## B. The Selection Decision at Issue.

On or about July 31, 2017, Bennington retired from his position as Deputy

Director of TECD, leaving his position vacant. JA17, 317. Following this

retirement, a vacancy for the position of Deputy Director of TECD was announced

and made open for selection on October 11, 2017. The position was subject to a

competitive and open selection process before a hiring decision was announced on

February 18, 2018. JA17, 79, 317, 319.[4] In the intervening period, Edward

Sobieranski, a Caucasian male who was the Branch Head for the Range & Training

Area Management Branch ("RTAMB") in TECD was tasked with serving as the

acting Deputy Director/Supervisory Head of TECD. JA17, J317. This temporary

acting role was one that Plaintiff had previously served in as well. JA133. At the

time of the selection process, both Sobieranski and Plaintiff applied for the

permanent Deputy Director position, and both were GS-14 employees. JA17, 317.

The selection process for the Deputy Director position consisted of three

separate phases: (1) a resume review panel; (2) an interview panel; and (3) final

---

[4] Plaintiff repeatedly refers to his non-selection for this position as a rejection of a "promotion," Br. at 29, and that he "was next in line," Br. at 7, for the position, suggesting that Plaintiff simply should have been elevated to the Deputy Director position. To the contrary, the record evidence showed that the position was competitive, generally open to applicants, posted publicly, and subject to a three-tiered selection process. JA78-86. Plaintiff was not "in line" to be promoted or to inherit a position but had to apply and interview for the position like all other applicants.

interviews with the selecting official, Hittle. JA17, 317. The resume review panel consisted of three individuals; none of whom was Hittle. JA17, 317. The resume review panel conducted their review of 72 resumes submitted for the position on December 12, 2017. JA17, 317-318 As to Sobieranski and Plaintiff, the resume review panel rated Plaintiff with a score of 145 and Sobieranski with a score of 138, but both individuals received the same score for their "experience" on their resumes. JA18, 318. However, three other individuals scored higher than Plaintiff on the resume review with two individuals scoring higher than Plaintiff based on their "experience." JA18, 320.

Following the resume review, the applicant pool was winnowed to the top 14 eligible candidates who then went on to the interview panel. JA18, 320. Plaintiff and Sobieranski were among those selected for interviews. JA18, 318. The interview panel consisted of four individuals; none of whom was Hittle. JA18, 318. Fourteen interviews were conducted by this panel between January 3 and 4, 2018, after which the interview panel recommended their three top candidates and two alternate candidates for the selecting official to interview. JA18, 318. Ultimately, the panel provided a unanimous, unranked list of candidates for Hittle to interview, which included Plaintiff, Sobieranski, and a third individual. JA18, 321. Interview panel members later testified as to their deliberations during Plaintiff's EEO proceedings, with one panel member testifying that "[plaintiff] and [Sobieranski]

were by far the top two candidates," and that "the panel was blown away" by plaintiff "but when [Sobieranski] interviewed later [the panel] again said 'holy cow' he was really good as well," thus describing the choice between the two as "a really tough call." JA18, 106, 318. A separate interviewer testified that he would have ranked Sobieranski as the top candidate for the position, immediately followed by plaintiff as the "Number 2" candidate. JA18, 96, 318.

Hittle then interviewed the three candidates provided to him by the interview panel on January 9, 2018—his first and final involvement in the selection process. JA18, 319. In advance of the interviews, Hittle provided interview questions to the three candidates, which he had drafted, and which had been screened and reviewed in accordance with HR policy. JA19, 319. Hittle based these questions on what he believed the responsibilities of the position would entail and sought to elicit technical details of a candidate's job history, the candidate's approach to problem solving, and the candidate's views on what he or she might best leverage their management skills and knowledge for TECD's needs. JA19, 66-68, 319.

On February 18, 2018, Hittle selected Sobieranski as the Deputy Director. JA19, 319. In a sworn statement Hittle provided on October 11, 2018, Hittle was asked for his reasons for selecting Plaintiff. JA70-76. In that sworn statement, Hittle stated that he viewed Plaintiff as "a very close second to Mr. Sobieranski" among applicants for the position, but ultimately believed Sobieranski to the best

6

candidate as Plaintiff, unlike Hittle, did not have a background in developing

policy. JA19, 73,75, 319. Hittle also explained that he believed Sobieranski had

experience that would be useful to TECD in range and training areas[5] and that

Sobieranski had been in the command longer than Plaintiff[6] and had more

examples of cross-service coordination that Hittle considered meaningful for the

Deputy Director position. JA19, 73-75, 319-320.

### C. Plaintiff's EEO Proceedings.[7]

On April 30, 2018, Plaintiff filed a formal EEO complaint, alleging that his

non-selection for the Deputy Director position was the product of discrimination

and retaliation for prior EEO complaints that he filed in 2015 and 2016. JA19-20,

128-131, 321. Following an investigation of Plaintiff's claims and a resulting 200+

page Report of Investigation, Plaintiff then sought a hearing before an Equal

---

[5] The term "range and training areas" refers to physical spaces where the United States Marine Corps trains in the field. *See* JA73, 188.

[6] Plaintiff asserts "that Mr. Smith had seven more years of experience than Mr. Sobieranski," Br. at 5, but relies on material only showing that Plaintiff had been at TECD longer, *see id.* rather than anything showing he had more experience generally than Sobieranski.

[7] During the District Court proceedings, Plaintiff objected to the recitation of what occurred in the EEOC proceedings because, as a legal matter, the findings had no weight at the summary judgment stage. JA139-141, 320. However, the recitation was provided both by Defendant and then the District Court, not as a legal finding, but to inform the case because Plaintiff's allegations of animus and what Hittle considered were based directly on Hittle's testimony in those EEO proceedings. *See* JA273.

Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ").

JA20, 321.

After both Plaintiff and the Marine Corps informed the AJ that they did not

need further discovery to present their arguments, a five-hour hearing with live

witness testimony was held on December 6, 2019, wherein both Plaintiff and Hittle

testified among others. JA20-21, 321. During the hearing, the AJ asked Hittle

about Plaintiff's December 2017 e-mail exchange raising Plaintiff's disagreement

over the re-assignment of contractors, where Plaintiff attributed this re-assignment

to his EEO complaints. JA31-32, 117-118, 278; *see also* JA61 (the e-mail at issue).

The AJ asked Hittle if he "t[ook] any steps to address [Plaintiff's] concerns that he

was being marginalized," to which Hittle answered that he "felt that [he] was being

drug into the conversation about the prior EEO action from [plaintiff]" but that

"[he] didn't want to be involved in that" and that Hittle's "goal was not to take

people from [plaintiff]" but to "get the work done and put the resources in the right

place," noting that the contractor who had been "reassigned" was there to do work

as needed and not specifically Plaintiff's designated subordinate. JA118-119. Hittle

added that when he saw Plaintiff's claims of marginalization and discrimination,

Hittle believed he "had to walk around [plaintiff] on eggshells," meaning that he

had to be "overly sensitive" to plaintiff's concerns while Hittle otherwise "did

everything in [his] power to be [] honest with [plaintiff] and straightforward."
JA118-119.

Seizing on the eggshell comment, Plaintiff's counsel in the EEO proceedings asked Hittle about it again, but Hittle explained that he "had never been the subject of an EEO complaint" and that being named in one by plaintiff in September 2016 made him "[feel] like [he] had failed in something" as he "[didn't] want anyone to feel that they're being not given full opportunity to perform their best." JA120-121 Hittle also testified that, despite his feeling that he needed to be sensitive, he believed that he and plaintiff were able to get their work together done on time and in a professional manner. JA121.[8]

Following the hearing, the AJ issued a decision in favor of the Marine Corps and subsequently denied reconsideration of that decision. JA321.

## II.  Procedural History

### A. Events Leading up to Summary Judgment Decision.

Plaintiff filed this lawsuit on December 17, 2021 in the United States District Court for the Eastern District of Virginia bringing two counts under Title VII for discrimination on the basis of race and for retaliation as to Plaintiff's non-

---

[8] As in his briefing below, Plaintiff conveniently omits context and portions of this testimony while making assertions that are unsupported. For instance, Plaintiff claims that "[a]t the EEOC hearing in this matter, . . . Hittle admitted that he was upset with Mr. Smith for naming him in an EEO complaint." Br. at 6. No such "admission" is found in the portions of the testimony to which Plaintiff cites.

selection for the Deputy Director position. JA4-11. Plaintiff's Complaint recited and principally relied on Hittle's "eggshells" testimony in support of Plaintiff's allegations of animus without providing the context of when that testimony was made and what Hittle was referencing, instead characterizing it as a supposed admission by Hittle that "he did not like working with [Plaintiff]." JA8.

Given the substantial record evidence and testimony adduced in the administrative proceedings,[9] Defendant moved for summary judgment on May 13, 2022. JA12-35. Prior to doing so, Defendant filed a consent motion indicating that he would be moving for summary judgment. JA321. In moving for summary judgment, Defendant argued that there were legitimate, non-discriminatory and non-retaliatory reasons for Plaintiff's non-selection, that Plaintiff could not make out a *prima facie* case of retaliation, and that Plaintiff's "eggshells" allegation did not constitute direct evidence of retaliation. JA28-35. In response, Plaintiff largely pivoted from his prior allegations and instead attacked Hittle's credibility, asserting that Hittle had made false statements and given shifting reasons for why he chose Sobieranski over Plaintiff. JA144-155. Plaintiff, however, did not argue that discovery in the case was appropriate or otherwise file a motion under Federal Rule of Civil Procedure 56(d). JA1-3, 144-155. On June 17, 2022, the Court heard

---

[9] The motion for summary judgment was also informed by Plaintiff's submission during the EEO proceedings that he did not need additional discovery. *See* JA321.

argument on Defendant's motion for summary judgment and granted Defendant's

motion to strike a declaration that Plaintiff filed after the conclusion of summary

judgment briefing. JA3, 314, 321.

### B. The District Court's Summary Judgment Decision.

On September 1, 2022, the District Court issued its memorandum opinion

and order, granting Defendant's motion for summary judgment and dismissing the

case. JA315. In its opinion, the District Court recited the undisputed facts set out

by Defendant that Plaintiff had either not disputed or failed to refute. JA316-321.

The Court then proceeded through Plaintiff's discrimination and retaliation claims

separately although evaluating both under the same framework applicable to

pretext in non-selection claims. JA322-335. As to Plaintiff's claim of

discrimination, the District Court (and Defendant) assumed *arguendo* that Plaintiff

had made a *prima facie* showing. JA232. Thus, the District Court's inquiry was

whether the decision not to select Plaintiff for the Deputy Director position was

based on a legitimate, nondiscriminatory reason: namely, Hittle's determination

that Sobieranski was best qualified for the job. JA323. The District Court

concluded that it was. JA323.

The District Court recounted Fourth Circuit caselaw establishing that courts

should not lightly second-guess hiring decisions and that, to show pretext in the

context of such a decision, plaintiffs had to point to their qualifications being

demonstrably superior or otherwise show that the employer's stated reason for the decision was false and that intentional discrimination was the real reason for the decision. JA323-324. The District Court noted that the record evidence did not show that Plaintiff was demonstrably superior and recounted that Plaintiff's non-selection was the result of "an open, structured process involving multiple levels of review and evaluation" where other individuals, apart from Hittle, had expressed that it was a tough choice between Plaintiff and Sobieranski or that Sobieranski was more qualified. JA325-326. The District Court then recounted the reasoning that Hittle had given for Plaintiff's non-selection and noted Plaintiff had "provided no evidence that would allow a reasonable mind to conclude that . . . Hittle's stated, non-discriminatory reasons for his selection decision were pretextual and that intentional racial discrimination was the real reason he selected Sobieranski over plaintiff." JA327.

In reaching that decision, the District Court also evaluated Plaintiff's various attacks on Hittle's credibility and found them unavailing, noting that they showed no inconsistency in Hittle's stated reasoning for selecting Sobieranski based on his policy experience. JA325. As to Plaintiff's claims that Sobieranski received favoritism in being selected as the "acting deputy chief," JA327, on an interim basis and that Plaintiff was higher organizationally in TECD, the District Court noted that both individuals were GS-14 employees and that they had both served as

acting Deputy Director. JA327. As to Plaintiff's claims that Hittle had supposedly "destroyed" evidence regarding his notes of the selection process, the Court found that this was immaterial to the selection rationale and that there was no evidence to suggest Hittle had to preserve these documents. JA327. As to Plaintiff calling into question whether Hittle could appropriately credit Sobieranski's experience, the District Court noted that, *as a matter of law*, it could not second-guess the wisdom of Hittle's beliefs. And as to Plaintiff's claims that Hittle was inconsistent in pointing to Sobieranski's practical or policy experience as the basis for his selection decision, the District Court observed that "a fair reading" of Hittle's testimony showed that he stated that "he valued Sobieranski's practical experience creating policy in both instances" where he was asked about the basis for the selection decision. JA328.

On Plaintiff's claim of retaliation, the District Court again assumed *arguendo* that Plaintiff had established a *prima facie* case of retaliation[10] and noted the non-retaliatory, legitimate reason provided for Plaintiff's non-selection—that Hittle believed that Sobieranski was the better qualified candidate. JA330. Thus, the inquiry turned to whether Plaintiff's non-selection was a pretext for retaliation.

---

[10] The District Court did not address Defendant's arguments that Plaintiff failed to state a *prima facie* case because he sought to tie EEO complaints filed in June 2015 and September 2016 to a selection decision in February 2018, and thus Plaintiff could not show causation under temporal proximity. *See* JA19-22, 287-288.

13

JA330. Having dispensed with Plaintiff's prior arguments attacking Hittle's credibility and decisionmaking, the District Court turned to Plaintiff's claims that Hittle's excerpted "eggshells" testimony evinced retaliatory animus. JA330. The District Court excerpted large portions of that testimony, showing that Hittle had expressed this sentiment in response to a question about a December 2017 e-mail—not the non-selection—and that Hittle had testified he felt he was still able to work professionally with Plaintiff. JA331-332. Reviewing this testimony, the District Court found as a legal matter that there was not a triable issue of material fact that any "EEO-induced eggshells," JA332, caused Plaintiff's non-selection, which occurred over multiple rounds of interviews that partly excluded Hittle and that concluded independently that "either Sobieranski or [P]laintiff would have been an appropriate selection." JA332.

Responding to caselaw cited by Plaintiff purportedly finding that expressions of discomfort could show pretext, the District Court noted that "[e]ach case [cited by Plaintiff] allowed a finding of pretext in the discrimination context based on statements attributable to supervisors made prior to the allegedly discriminatory action." JA334.  By contrast, the record evidence did not show retaliatory comments by Hittle before or during the selection process, and Plaintiff himself admitted that his interview "was professionally done." JA334. Turning once more to Plaintiff's repeated re-characterization of the *ex post* "eggshells"

14

comment, the District Court noted that it did not raise a triable issue of fact. JA334. Specifically, there was no basis for a jury to "conclude [as it is required to do as a legal matter] that the only possible explanation for [P]laintiff's non-selection was . . . Hittle's desire to retaliate against [P]laintiff" given that the comment was made over a year after the selection decision, did not evince retaliatory animus on its face, and the actual selection was the product of a multi-tiered process that came down to Hittle's business judgment. JA334. Indeed, the Court noted that if it were to find pretext this would "impermissibly second-guess the wisdom or folly of . . . Hittle's business judgments." JA335. Thus, the District Court granted Defendant's motion for summary judgment on both of Plaintiff's counts. Plaintiff subsequently noticed his appeal from the District Court's order on September 15, 2022. JA337.

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment to Defendant on both of Plaintiff's claims. The record evidence showed that Plaintiff's non-selection—the basis for his discrimination and retaliation claims—was the process of an independent, multi-tiered review process that, at the end, came down to Hittle's business judgment that Sobieranski was a better qualified candidate than Plaintiff. As this Court's precedents have repeatedly held, a hiring decision is vested in the sound business judgment of an employer and courts may generally not second-guess those decisions. Accordingly, a court cannot find pretext of

15

discrimination and/or retaliation in a selection decision, as a legal matter, unless a plaintiff shows that he was the demonstrably superior candidate for the position or adduces sufficient evidence to undermine the credibility of the employer's stated for his or her non-selection. The District Court properly concluded that Plaintiff had done neither based on the well-developed record evidence. Plaintiff could not show that he was the demonstrably superior candidate to Sobieranski, as the resume review panel had found other applicants with superior resumes to Plaintiff, and at least one individual on the interview panel believed Sobieranski to be a better choice than Plaintiff.

The District Court also addressed Plaintiff's contentions that Hittle was not credible. It found Plaintiff's arguments on credibility were either inaccurate based on an actual reading of the record evidence or immaterial to whether or not the selection decision was animated by pretext. In particular, the District Court noted that there was no prevarication or inconsistency by Hittle in why he picked Sobieranski over Plaintiff—the very thing that Plaintiff had to show in order to demonstrate pretext. Meanwhile, Plaintiff's other complaints of Hittle making false statements in parts of his EEO testimony were neither supported by the record evidence nor part of his selection decision. Turning to Plaintiff's repeated contortion of Hittle's "eggshells" comment, the District Court properly noted that such *ex post* testimony could not establish causation as a legal matter. This was

16

because Plaintiff's theory of retaliatory animus required ignoring the independent, multiple-level selection process and just focusing on Hittle's out-of-context aside about his feelings in reaction to a December 2017 e-mail.

In response to the District Court's holding, Plaintiff cannot and does not challenge the conclusion that he was not a demonstrably superior candidate. He cannot and does not challenge the District Court's conclusion on the record evidence that there was no inconsistency in Hittle's decision to pick Sobieranski over him based on Sobieranski's policy experience. And he cannot challenge the District Court's conclusion that Plaintiff's claims of retaliatory animus based on an "eggshells" complaint had no relation to and long postdated the non-selection decision. Plaintiff's failure to meaningfully challenge any of these points ends the inquiry as he cannot show any fault in the District Court's conclusions based on the operative legal framework for showing pretext in non-selection cases. Moreover, Plaintiff has again failed to show any inference of discriminatory animus.

Instead, on appeal, Plaintiff strains once again to make something of the "eggshells" comment as an expression of retaliatory animus. Yet, Plaintiff again fails to make any argument that this was the cause of any differential treatment— the very thing he must show for pretext. Further, Plaintiff omits the record evidence, showing that this statement was wholly separate from his non-selection

and not indicative of any animus. On appeal, Plaintiff otherwise repeats the same

arguments from his summary judgment opposition seeking to impugn Hittle's

credibility on immaterial points that in no way show any inconsistency or

deception in Hittle's stated reason for the selection decision. Plaintiff suggests that

"[t]he district court failed to consider" these arguments. Br. at 17. To the contrary,

the District Court did consider these arguments and found them irrelevant because

they have no relation to the operative legal question of whether Hittle's stated

reasons for the non-selection were pretext. Furthermore, these arguments were not

supported by the record evidence. In sum, Plaintiff grasps at straws, asking this

Court to send Hittle's selection decision to a jury so that it can hyper-scrutinize this

employment decision based on a far-flung theory that Plaintiff's non-selection

could only be attributable to discriminatory and/or retaliatory animus despite it

being the by-product of a three-round process where the selected applicant had also

been rated highly. This Court's precedents squarely preclude this course, however.

Accordingly, this Court should affirm the District Court's grant of summary

judgment to Acting Secretary Del Toro on all counts.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*.

*Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 259 (4th Cir. 2005).

Summary judgment is appropriate when the record demonstrates "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Although the non-moving party is entitled to

all reasonable, non-speculative inferences drawn in his favor, such inferences still

must be justifiable from the evidence, and the non-moving party must present

"significantly probative"—not "merely colorable"—evidence in his favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 254 (1986); *see Sylvia Dev.*

*Corp. v. Calvert City.*, 48 F.3d 810, 818 (4th Cir. 1995). A plaintiff does not defeat

summary judgment with speculation, "the mere existence of *some* alleged factual

dispute," or "the building of one inference upon another." *See Liberty Lobby*, 477

U.S. at 247; *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008).[11]

---

[11] Plaintiff relies on inapposite case law to make statements that do not accurately reflect the summary judgment standard. For instance, Plaintiff asserts that "[e]ven if the weight of the evidence favors the moving party, a court is not authorized to grant summary judgment," relying on *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464 (1962). *See* Br. at 10. Plaintiff's cited case stands for no such proposition or any remark on the general standard for summary judgment but rather discusses how it should work specifically in antitrust actions where motive is at issue. *See Poller*, 368 U.S. at 473 ("We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles."). Plaintiff otherwise asserts that "[t]he non-moving party's demonstration of a genuine issue of material fact is not a high bar," relying on *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968). Plaintiff once again relies on a case discussing the intricacies of the summary judgment standard in antitrust in determining, as a matter of fact and law, "the existence of a conspiracy." *First Nat'l Bank*, 391 U.S. at 289. Notably missing from Plaintiff's recitation of the standard is any citation to the actual terms of Rule 56(a), whereby summary judgment is appropriate where "there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as *a matter of law*." Fed. R. Civ. P. 56(a) (emphases added).

## ARGUMENT

I. **THE DISTRICT COURT CORRECTLY ENTERED SUMMARY JUDGMENT IN FAVOR OF DEFENDANT ON PLAINTIFF'S NON-SELECTION CLAIMS.**

The District Court properly held that Defendant was entitled to the entry of summary judgment on Plaintiff non-selection claims of retaliation and discrimination. The District Court assumed for the purposes of summary judgment that Plaintiff had made out a *prima facie* case of retaliation and discrimination and thus proceeded onwards to the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011).[12] Under this familiar rubric, once a plaintiff establishes a *prima facie* case, a burden of production—not proof or persuasion—shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant meets its burden of production, a plaintiff must then prove,

---

[12] Defendant argued that the record evidence did not show causation necessary to establish a *prima facie* case of retaliation given that Plaintiff was trying to tie a non-selection in February 2018 to protected activity from June 2015 and September 2016. *See* JA34-35, 288-289. The Court, should it wish, may consider affirmance of the District Court's summary judgment ruling on Plaintiff's retaliation claim on this basis as well. *See Fed. Ins. Co. v. Ward*, 166 F. App'x 24, 31 (4th Cir. 2006) ("Although a court of appeals may not consider an argument not raised by an appellant as grounds for reversal, it may consider any evidence in the record as grounds for affirmance.").

by a preponderance of the evidence, that the defendant's articulated reasons are a pretext for discrimination. *Id.* Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff *remains at all times with the plaintiff*." *Id.* (emphasis added).

In a selection decision, to show pretext based on a comparison of candidates' qualifications, a Title VII plaintiff must demonstrate not just that his "job qualifications [were] similar or only slightly superior to those of the person eventually selected." *Heiko v. Columbo Sav. Bank, F.S.B.*, 434 F.3d 249, 261-262 (4th Cir. 2006). Rather, the employee must make "a strong showing that his qualifications" for the assignment in question "are demonstrably superior." *Id.* (emphasis added); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019). This showing is required because normally "the promotion decision remains vested in the sound business judgment of the employer." *Heiko*, 434 F.3d at 261-262; *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.").

For pretext, "the inquiry is further honed so that to establish that a proffered reason for the challenged action was pretext for discrimination, the plaintiff must prove 'both that the reason was false, and that discrimination was the real reason'

21

for the challenged conduct.'" *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377–

78 (4th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515

(1993)). As this Court has conclusively held, a plaintiff cannot succeed merely by

establishing that the given rationale for an action was not "wise, fair, or even

correct." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

    With respect to specifically showing pretext in retaliation claims, this Court

has previously held that "the desire to retaliate [must be] the but-for cause of the

challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900

(4th Cir. 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360

(2013)); *see also Foster v. Univ. of Md.- Eastern Shore*, 787 F.3d 243, 252 (4th

Cir. 2015). In other words, a plaintiff must show that the employer's adverse action

"would not have occurred in the absence of—that is, but for—the defendant's

conduct." *Nassar*, 570 U.S. at 346-347 (internal quotations omitted).

    However, the Supreme Court's decision in *Babb v. Wilkie*, 140 S. Ct. 1168

(2020), signaled a potential change to the causation standard applicable to federal-

sector employees in Title VII retaliation cases. In *Babb*, the Supreme Court

addressed the causation standard required under the federal-sector provision of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a), the text

of which is materially identical to Title VII's federal-sector provision. *Compare* 29

U.S.C. § 633a(a) *with* 42 U.S.C. § 2000e-16(a). Relying on the plain meaning of

the statutory language, the Supreme Court held that the ADEA's federal sector provision does not "impose[ ] liability only when age is a 'but-for cause' of the personnel action in question." *Babb*, 140 S. Ct. at 1171. Rather, "[t]he plain meaning of the critical statutory language ('made free from any discrimination based on age') demands that personnel actions be untainted by any consideration of age." *Id.* Under this standard, "age must be the but-for cause of differential treatment" of the federal employee, but that differential treatment need not be "a but-for cause of the *ultimate decision*," so long as it played some part in the decision that was made. *Id*. at 1174 (emphasis in original).

This Court has not addressed whether, or to what extent, *Babb* applies to the interpretation of Title VII's federal-sector anti-retaliation provision as to showing pretext. However, at least two Courts of Appeals have concluded that the standard articulated in *Babb* "controls cases arising under Title VII's nearly identical text" in federal-sector retaliation cases. *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021); *see also Huff v. Buttigieg*, 42 F.4th 638, 646 (7th Cir. 2022). Given the materially identical language of the ADEA's federal-sector provision and Title VII's federal-sector provision, Defendant takes the position that *Babb*'s interpretation applies here although it makes no difference based on the record evidence and the District Court's conclusion.

In evaluating whether or not Plaintiff had demonstrated pretext, the District

23

Court properly concluded that Plaintiff could not show pretext as a legal matter

based on the record evidence. That is, the District Court found that the record

evidence did not show that Plaintiff was demonstrably superior to the applicant

chosen, did not show any falsity in the basis for Hittle's non-selection, and did not

show any discriminatory let alone retaliatory animus that was the cause of the

selection decision. Accordingly, Plaintiff could not establish pretext under the legal

framework applicable to his non-selection claims. On appeal, Plaintiff otherwise

fails to rebut many of those points or repeats arguments correctly dispensed of by

the District Court. These efforts are unavailing. And, as discussed in the

subsequent section, much of Plaintiff's argument instead proceeds on (incorrectly)

claiming that the District Court ignored arguments that are immaterial to the

pretext inquiry.

### A. The District Court Correctly Concluded that Plaintiff Was Not Demonstrably Superior to Sobieranski.

As the District Court correctly concluded, Plaintiff could not establish

pretext by showing that he was demonstrably superior to Sobieranski. Plaintiff now

claims that the District Court erred because Plaintiff was "was not relying on a

qualifications comparison to establish pretext in this case." Br. at 8. To the

contrary, Plaintiff's Complaint did assert pretext on this basis, suggesting that

Plaintiff was demonstrably superior to Sobieranski based on his degrees, his

resume review panel score, and an excerpt of testimony given by a member of the

24

interview panel. *See* JA8-9. However, the District Court reviewed all the record evidence and noted that it "d[id] not support any inference that [plaintiff] was overall more qualified than Sobieranski." JA326.[13] The record evidence showed that Plaintiff and Sobieranski received three rounds of review as candidates wherein they received equal scores for their "experience" on their resumes, other candidates had even higher ranked resumes, and Sobieranski was also well regarded, if not potentially better regarded than Plaintiff. JA325-326.

Plaintiff has no rejoinder to this conclusion by the District Court, and he appears to now concede that Sobieranski was not demonstrably less qualified than him for the Deputy Director position. *See* Br. at 12 ("And yes, it is undisputed that the panel interviewers were independent decisionmakers and that both Mr. Smith and Mr. Sobieranski were qualified for the position."). Thus, to show pretext, Plaintiff had to show some sort of falsity in the reason for his non-selection or some other inference of discriminatory and/or retaliatory animus. *See Heiko*, 434 F.3d at 259 ("A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that

---

[13] As Defendant recounted in the briefing below, Plaintiff's recitation of his degrees was immaterial to his qualifications because the Deputy Director position did not require or prioritize advanced education. *See Harris v. Mayor & City Council of Balt.*, 429 F. App'x 195, 204 (4th Cir. 2011) (noting applicant's superiority in one area was not dispositive for a non-selection claim when a decision was made based on other considerations).

otherwise undermines the credibility of the employer's stated reasons."). He did not show either for the reasons subsequently discussed.

### B. The District Court Correctly Concluded that There Was No Inconsistency in Hittle's Decision to Select Sobieranski Over Plaintiff.

As to the other inquiry relevant to pretext here—whether Hittle's stated reasoning for selecting Sobieranski was false—the District Court correctly concluded that there was no pretext. That is, Hittle's stated reasons for selecting Sobieranski were that Hittle believed Sobieranski had a better background than Plaintiff in developing policy and Sobieranski had experience that would be useful to the range and training areas with which TECD was involved. JA319. Specifically, Sobieranski had previously written Marine Corps orders, policies, and directives and had co-written policies in conjunction with his counterparts in the Army, which Hittle believed "tipped the scale for [him]" over Plaintiff, given Hittle's belief of what would be needed in the Deputy Director position. JA326-327. By contrast, Hittle believed that Plaintiff did not have the same background in developing policy or a similar background in cross-service coordination with other military branches, which thus tipped the decision in Sobieranski's favor in what Hittle otherwise described as a "very tough" decision between "two candidates that were very, very close on a lot of things." JA200, 327.

At summary judgment, Plaintiff did not attempt to argue that he had the same background in developing policy or in cross-service coordination as Hittle but instead attempted to contort Hittle's testimony and claimed that Hittle prevaricated in his reasoning for Sobieranski's selection. Namely, Plaintiff argued that Hittle had given a sworn declaration where he pointed to Sobieranski's practical experience and then pointed to Sobieranski's policy experience during the EEOC hearing. JA146. The District Court properly rejected this argument. The District Court noted that "[a] fair reading . . . Hittle's sworn declaration and EEOC testimony makes clear that . . . Hittle stated he valued Sobieranski's practical experience creating policy in both instances." JA328 n.14. And the District Court recognized that Hittle was "consistent[] [in] explain[ing] why he valued Sobieranski's specific qualifications." JA328. On appeal, Plaintiff has no argument that the District Court erred in this determination. His silence is telling and conclusive. *See DeJarnette*, 133 F.3d at 299 ("[E]mployee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination.") (citation omitted).

At best, Plaintiff seizes on one piece of Hittle's testimony regarding his views on the value of Sobieranski's experience in developing simulations. *See* Br. at 18. Because this experience is "based on Mr. Sobieranski's work with an

27

obsolete technological system 30 years prior," Plaintiff claims that Hittle crediting this experience "strains credulity." Br. at 18.[14] Plaintiff's disagreement with the wisdom of Hittle's belief is the classic marker of something that this Court has repeatedly warned does not show pretext. Namely, a plaintiff cannot succeed by establishing that the given rationale for an action was not "wise, fair, or even correct." *DeJarnette*, 133 F.3d at 299; *see also Smith v. Univ. of N.C.*, 632 F.2d 316, 346 (4th Cir. 1980) ("[T]he law does not require, in the first instance, that employment be rational, wise, or well-considered-only that it be nondiscriminatory.") (citation omitted). That Plaintiff might not agree with Hittle's belief is immaterial to pretext because it is well-settled that "[s]ubjectivity in . . . promotion decisions is permitted so long as it lacks discriminatory intent." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 559 (4th Cir. 2011).

Moreover, the District Court noted that Sobieranski's experience in training simulations was not actually determinative of Hittle's selection decision. *See* JA325. The record evidence instead showed that Hittle had actually credited Plaintiff's experience "working on the training simulation side," but what influenced Hittle's selection of Sobieranski was the applicants' relative policy

---

[14] There is no record evidence, and Plaintiff points to none, as to the obsolescence of this system. Further, Plaintiff himself offers no full explanation of why Hittle valuing Sobieranski for his involvement in this system truly "strains credulity," other than Plaintiff's cursory assertion that the system is decades-old.

experience. *See* JA73 ("Mr. Smith in comparison had a lot of general experience working on the training simulation side but did not have the background on developing policy.").[15] In short, Plaintiff cannot show pretext in Hittle's stated reasoning for choosing Sobieranski over him.

## C. The District Court Correctly Concluded that Plaintiff Did Not Establish any Inference of Discriminatory and or Retaliatory Animus.

Lastly, the District Court properly held that there was no pretext based on any inference of discriminatory or retaliatory animus. Before the District Court, Plaintiff proffered no record evidence suggesting any inference of discriminatory animus, and he fails to do so on appeal. Rather, he continues to harp on Hittle's isolated, after-the-fact EEOC hearing testimony, which he claims "[t]he district court improperly viewed." JA11. Yet, there was nothing improper about the District Court's decision that these comments could not show pretext as a legal matter.

Missing from Plaintiff's brief is a recitation of the requirement of causation both under the *Babb* framework and this Court's existing interpretation of *Nassar*. Although the District Court recounted the *Nassar* framework of but-for causation,

---

[15] Plaintiff cursorily asserts that "Hittle curiously cited the selectee's decades-old experience with an obsolete technology as a prime reason for selecting him." Br. at 15 (emphasis added). This is directly contrary to the record evidence that Sobieranski was selected for his policy experience. Tellingly, Plaintiff does not provide any citation for his assertion.

its holding is equally applicable to the *Babb* framework. That is, the District Court

recounted—in their full context—Hittle's remarks and held "such testimony is

insufficient to raise a triable issue of material fact regarding the . . . 'real reason'

for plaintiff's non-selection." JA332. Simply, these *post hoc* remarks could not

show that protected activity was the but-for cause of any differential treatment, or

that it could have "play[e]d any part in the way [the] decision [was] made." *Babb*,

140 S. Ct. at 1174. This was because there had been "multiple rounds of

independent review" that led to the selection decision, and the record evidence

established "that either Sobieranski or plaintiff would have been an appropriate

selection in the eyes of . . . seven other individuals." JA332. In other words,

Plaintiff's theory of retaliatory animus required ignoring the commendations of

Sobieranski by individuals other than Hittle—including by one reviewer who rated

Sobieranski over Plaintiff—and required ignoring a multi-stage interview process

to find that Plaintiff would have been chosen for the Deputy Director position. It

otherwise required the District Court to assume that Plaintiff would have been

chosen and that his non-selection could only be explained by some malevolent plot

by Hittle to retaliate against Plaintiff all on the basis of Hittle making an after-the-

fact comment that he needed to be "overly sensitive" to Plaintiff's concerns.

JA119.

     The District Court could not credit this theory as a matter of law. To do so

"would be to discredit the entire selection process and impermissibly second- guess the wisdom or folly of . . . Hittle's business judgments," JA334-335; the very thing this Court has repeatedly admonished district courts *not* to do. *See, e.g.*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (holding that courts "do not sit as a super-personnel department weighing the prudence of employment decisions")  (citation omitted).

Rather than explain the District Court's reasoning for why it found, as a *legal* matter, that there was not record evidence sufficient to show the causation needed for pretext, Plaintiff makes a number of mischaracterizations of Hittle's EEOC testimony and the District Court's opinion on appeal. Plaintiff cites to supposed evidence that Hittle testified he felt he had to "walk on eggshells" because of Plaintiff's EEO complaints and that Hittle was uncomfortable around Plaintiff because of his EEO complaint, but this is a contortion of the evidence. *See* Br. at 11-12.[16] In particular, Plaintiff continues to bandy about Hittle's eggshells

---

[16] Plaintiff claims that Hittle made an "admission that he did not want a deputy with whom he felt uncomfortable" and that this "constitutes circumstantial evidence of retaliatory animus." Br. at 13. There is no such "admission" in the record. Rather, in response to leading questions from Plaintiff's counsel at the EEOC proceedings, asking if it would have been comfortable for [Hittle] to have a deputy director that [he] felt like [he] had to walk around on eggshells when he was around," Hittle responded "[n]o" and then again responded that he had not considered whether he would have been uncomfortable with Plaintiff in making the Deputy Director selection. Hittle further testified that Plaintiff's complaints never affected their professional dealings. JA248-249.

comment on appeal while—as he did before the District Court—omitting context that Hittle made the "eggshells" comment over a year after the non-selection decision and that he provided it in explaining that he wanted to be "overly sensitive" to Plaintiff's concerns as they related to a December 2017 email that Hittle was independently asked about at the EEO hearing. *See* JA238-240. Hittle also further explained that he felt like he had to walk around on eggshells because he "d[id]n't want anyone to feel that they're being not given full opportunity to perform their best." JA247. Thus, an accurate, contextual reading of Hittle's testimony is that he believed he had to be sensitive to Plaintiff's concerns that he was being marginalized. In any event, this *ex post* testimony could not show causation as the District Court correctly held. *See* JA334 ("Hittle's later testimony explaining that he needed to be cognizant of how plaintiff might perceive their interactions during that process does not render . . . Hittle's stated reasons for his decision pretextual.").

Next, Plaintiff points to caselaw from the Fourth Circuit and a non-dispositive district court decision that has "ruled that a decisionmaker's expression of discomfort about a person based on their protected class does support an inference of discrimination." Br. at 14. The District Court, however, considered Plaintiff's cited case, *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (4th Cir. 2010), but correctly noted that this Court found pretext for gender

32

discrimination in *Merritt* based on a bevy of evidence including inconsistencies in the bases for Plaintiff's termination, the employer selectively requiring physical activity tests to the benefit of male employees, and evidence of "very specific yet pervasive aversion to the idea of female Pickup and Delivery drivers." JA333 (quoting *Merritt*, 601 F.3d at 300). Thus, this Court in *Merritt* found much more than an isolated expression of "discomfort" to establish pretext and also "allowed a finding of pretext in the discrimination context based on statements attributable to supervisors made prior to the allegedly discriminatory action." JA334.

Plaintiff otherwise takes issue with the District Court's view of *Merritt* and claims that "the fact that . . . Hittle testified about his motive after—rather than at the time of the decision—does not render his admission irrelevant." Br. at 15 (citing *Foster*, 787 F.3d at 253). But Plaintiff's citation to *Foster* says no such thing, and he is citing to a passage that holds that causation for a *prima facie* case can be shown by a "statement of retaliatory animus." *Foster*, 787 F.3d at 253; *see also id.* at 247 (involving a surprisingly "candid[]" reason for plaintiff's termination on the record); *see also id.* at 253-254 (finding pretext based on a number of inconsistencies in the reason for plaintiff's termination). In any event, *Merritt* is completely dissimilar from the instant case in which Plaintiff strains to infer retaliatory animus solely from an isolated *ex post* statement from a supervisor—who Plaintiff admitted conducted his interview in a professional

33

manner—made more than a year after the selection decision. *See* JA334.

Plaintiff otherwise cites to a non-binding, out-of-circuit district court decision, *Santelli v. Electro-Motive, a Div. of Gen. Motors Corp.*, 136 F. Supp. 2d 922 (N.D. Ill. 2001), but that case involved record evidence of pretext where the plaintiff had shown the inconsistency of her employer's stated reasons for transferring her. *See id.* at 935 ("She points out several reasons to doubt EMD's articulation of its policy [as to employee transfers]."). This inconsistency thus rebutted the defendant's stated nondiscriminatory reasons for plaintiff's transfer, and thus—then and only then—could the case go before a jury to examine the decisionmaker's "demeanor and gauge his veracity." *Id.* at 326. Plaintiff has done no such thing here. Given Plaintiff's failure to show any pretext in Hittle's stated reason for selecting Sobieranski, the Court should affirm the District Court's grant of summary judgment.

## II.  PLAINTIFF'S REMAINING ARGUMENTS ON APPEAL ARE IMMATERIAL TO THE PRETEXT INQUIRY.

Rather than confront the District Court's actual holding and the operative framework for his non-selection claims, Plaintiff's main arguments on appeal are that the District Court improperly did not review "other evidence of pretext" or otherwise "improperly weighed evidence of . . . Hittle's credibility in isolation." Br. at 15, 19. Neither argument is persuasive or correct. Plaintiff claims that "[t]he district court . . . inexplicably declined to examine" other evidence of pretext that

34

he offered and that "there was no mention of the evidence of pretext" by the District Court. Br. at 16. Quite to the contrary.

Many of the arguments Plaintiff presents on appeal were presented before the District Court and then reviewed and rejected by that court. In particular, the District Court acknowledged Plaintiff's arguments of "purported misrepresentations" by Hittle but found that they "had no bearing on Col[.] Hittle's decision to select Sobieranski over [P]laintiff and thus [we]re immaterial to th[e] [District] Court's analysis." JA325 (quotation omitted); *see also* JA325 ("The Court agrees with defendant."). The District Court's reasoning thus comported with this Court's caselaw, which holds that a "plaintiff cannot seek to expose [a] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). Indeed, this Court has held that a plaintiff "cannot establish pretext by relying on criteria of h[is] choosing when the employer based its decision on other grounds." *Anderson*, 406 F.3d at 271.

But this was exactly what Plaintiff was trying to do before the District Court in selectively excerpting other out-of-context statements by Hittle that Plaintiff alleged were "false statements," JA148, but that had no bearing whatsoever on the reason for Sobieranski's selection decision—the only thing the District Court

35

needed to evaluate in terms of Hittle's credibility. Plaintiff raises many of these arguments here as if they had not been addressed by the District Court and again asserts that there is pretext by focusing on items completely unrelated to Hittle's rationale for the selection decision. These arguments fall flat again. Defendant addresses them in turn below.

### A. Plaintiff's Arguments on Temporal Proximity Are Immaterial to Pretext and Fundamentally Misread the District Court's Opinion.

Plaintiff's first argument is that the District Court made no mention of "the short time between [Plaintiff's] complaint and . . . Hittle's decision" and "ignored the evidence supporting [Plaintiff]'s *prima facie* case." Br. at 17. Plaintiff argues that the evidence he presented "constitutes sufficient temporal proximity to establish causation at this stage of the litigation." Br. at 17. Plaintiff's argument is genuinely perplexing because the District Court assumed *arguendo* that Plaintiff had made out a *prima facie* case on both discrimination and retaliation and granted summary judgment on a completely separate basis. *See* JA323, 330 ("The Court, again, assumes *arguendo* that plaintiff has made his *prima facie* case. . . . The controlling question thus returns to the issue of pretext."). It is not clear what the District Court supposedly ignored if it actually assumed the merits of Plaintiff's *prima facie* case, of which causation is an element. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

36

Defendant's best guess is that Plaintiff may be arguing that temporal proximity is relevant to pretext. This argument was not made in the District Court for one and cannot be raised here. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) ("We have repeatedly held that issues raised for the first time on appeal generally will not be considered."). For another, this Court and other courts of appeals have held that "temporal proximity, without more, does not support a finding of pretext." *Jones v. UnitedHealth Grp., Inc.*, 802 F. App'x 780, 783 (4th Cir. 2020); *see also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) ("[C]lose temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment.").

And finally, Plaintiff's evidence of temporal proximity—the fact he "complained to . . . Hittle . . . on December 20, 2017" and "about, one month later, . . . Hittle rejected Mr. Smith's application for promotion"—is a red herring that has no relevance to Plaintiff's non-selection. Not only does this sequence not in any way undercut the stated basis for Hittle's decision to select Sobieranski, but Plaintiff's "complaint" was an impromptu assertion that Hittle had discriminated against him after Hittle simply informed Plaintiff that Hittle was "open to comments and thoughts" on why Hittle should change an assignment of personnel

that Plaintiff disagreed with. JA60.[17] This series of events does not show

retaliatory animus as this Court has more recently held that an employee cannot

invoke his or her protected activity as a shield to anything in the workplace that he

or she does not like. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896 (4th Cir. 2017)

(rejecting the premise that "all employees who have reported any Title VII

violation must be granted permanent immunity from any adverse action taken by

an employer for any reason in the future"). This simply does not demonstrate any

kind of animus or lack of credibility in the basis for Hittle's selection decision.

### B. The District Court Squarely Addressed Plaintiff's Argument that Hittle Destroyed Evidence as well as Its Relevance to Pretext.

Plaintiff's next argument is that "[t]he district court improperly ignored . . .

Hittle's destruction of all contemporaneous evidence of his selection rationale." Br.

at 18. Specifically, Plaintiff points to Hittle's EEO declaration where Hittle stated

that he had not kept his notes from the interviews he conducted for the Deputy

Director position, and Plaintiff asserts that "[a] reasonable jury could find that . . .

Hittle destroyed the notes because they were unfavorable to him." Br. at 19. There

---

[17] Missing from Plaintiff's invocation of this email is Hittle's common sense and appropriate reaction in the face of being accused of discrimination, engaging in a "hostile environment," and "reprisal" by Plaintiff in response to a simple workplace query. JA61. Specifically, Hittle appropriately directed Plaintiff to "consult with HR, and any others [he] fe[lt] appropriate" if Plaintiff was making a complaint, and Hittle noted that he "copied G1 for awareness, from the perspective of HR matters." JA61. Such a course of action—i.e., advising Plaintiff of his rights and copying HR—hardly evinces retaliatory animus by Hittle.

are a multitude of flaws in Plaintiff's argument. To start, the District Court expressly addressed this "argument regarding . . . Hittle's purported destruction of evidence but f[ound] that [this] argument lack[ed] merit where there [was] no evidence to suggest that . . . Hittle was under any obligation to preserve documents and where the parties repeatedly and affirmatively chose not to pursue discovery." JA327. Plaintiff has no rejoinder to this point, nor could he have one.

Notably, Plaintiff proffers no argument here and made none before the District Court that Hittle *had* to retain his notes, and Hittle was generally under no obligation to hold onto them. *See, e.g.*, *Vaughn v. Danzig*, 18 F. App'x 122, 125 (4th Cir. 2001) ("[D]estruction [of records predating a document request] did not violate federal law, as agencies are not required to retain records on the possibility that a FOIA or Privacy Act request may be submitted."). More importantly, Plaintiff is completely speculating that Hittle "intentionally" destroyed those notes or that there is something unfavorable in those notes when quite the opposite could be true. This bare speculation cannot establish pretext and cannot create a material dispute of fact to avert summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). In short, Plaintiff's speculation about the contents of Hittle's interview

notes and why they no longer exist cannot establish pretext as a legal matter as the

District Court rightly concluded.[18]

### C. Sobieranski's Tenure as Acting Deputy Director Is Immaterial to Pretext.

Plaintiff's next argument on appeal is that the District Court

"acknowledge[d] [P]laintiff's argument that . . . Hittle made false statements to

bolster Mr. Sobieranski's qualifications but d[id] not explain why . . . Hittle's false

statements about material facts does not impeach his credibility." Br. at 20. None

of these points are true. While the District Court recounted that "plaintiff argue[d]

that . . . Hittle made a series of false statements," JA324, it never credited this

---

[18] Plaintiff separately argues that Hittle should have kept any notes because he "knew that Mr. Smith had a pending discrimination complaint against him," Br. at 19, because "[t[he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). There is no record evidence that Hittle should have known that Plaintiff would file a lawsuit over his non-selection at the time he discarded his notes. Thus, Plaintiff's cited case, *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995), is inapposite as it involved the destruction of evidence by an expert *after* a lawsuit had commenced. *See id.* at 155 (recounting how one party's expert had destroyed a boat in his examination of it in order to prepare expert testimony). As he did in the District Court, Plaintiff also claims that "Defendant has offered no explanation for its failure to produce the justification memorandum that . . . Hittle said he submitted to Major General Iiams." Br. at 19; JA148. As in the District Court proceedings, Plaintiff does not point to any record evidence that there was such a "justification memorandum" submitted to Hittle's superiors. Hittle never mentioned a "justification memorandum" in his EEO declaration, *see* JA72, and noted in his EEO hearing that he had only discussed the selection of the Deputy Director/Supervisory Head "at a cursory level." JA237.

argument.[19] Instead, the District Court recounted Plaintiff's arguments about supposed "false statements," but expressly noted that none were material to the pretext analysis as they showed "no inconsistency in . . . Hittle's stated reason for not selecting plaintiff." JA325 (quotation omitted).

On appeal, Plaintiff continues this tangential line of argument and devotes some five pages to the claim that Hittle had a "desire to conceal the advantage he gave [Sobieranski] in the selection process," in appointing Sobieranski as Acting Deputy Director. Br. at 20. However, not one of his arguments shows how this is relevant to Hittle's selection decision. In fact, Hittle's stated reasons for selecting Sobieranski over Plaintiff did not in any way cite Sobieranski's acting role and, in fact, cited work that Sobieranski had done before Sobieranski ever became Acting Deputy Director. JA74. And, as previously noted, the credibility of this stated reason is the only relevant issue of credibility for the pretext inquiry.

Plaintiff's argument that Hittle placed Sobieranski in an Acting Deputy Director to engineer his selection over Plaintiff is also the kind of fanciful speculation that does not suffice to defeat summary judgment. *See Beale*, 769 F.2d at 214. It assumes, without record evidence, that Hittle engaged in an elaborate scheme to have Sobieranski become the Deputy Director over Plaintiff. Yet this

---

[19] On appeal, Plaintiff fails to cite to any part of the District Court's opinion where it accepted the premise that Hittle had made false statements.

41

speculation falls apart under the record evidence. The selection decision took place over three rounds of review, where the first two rounds did not involve Hittle, and where multiple reviewers recommended Sobieranski.

Plaintiff otherwise claims that Sobieranski's Acting Deputy Director role gave him an advantage in the resume review stage of the selection process. Br. at 22. While Plaintiff talks much of "the tremendous advantage" Sobieranski had as Acting Deputy Director, he conveniently omits that he "served stints as Acting Deputy Director multiple times prior to 2017," thereby cutting against any unique advantage that this position gave Sobieranski over Plaintiff. JA133; *see also* JA327. Moreover, Plaintiff neglects to mention that Sobieranski was also highly recommended by the interview panel and that the resume review panel was only the first round of the selection process and not the end-all, be-all for the selection decision. JA18, 96, 106. If the resume review panel had been the deciding factor, then likely neither Plaintiff nor Sobieranski would have been selected as there were three candidates rated higher than Plaintiff. JA17, 102. In any event, Sobieranski's tenure as acting Deputy Director is immaterial to pretext.

### D. Hittle's Testimony Regarding Sobieranski's Organizational Level Is Immaterial to Pretext.

Plaintiff then argues that "the district court did not consider" "Hittle's attempts to falsely elevate Mr. Sobieranski's organizational level to support his decision to promote him . . . or the supporting evidence as part of its analysis of

42

Mr. Smith's retaliation claim." Br. at 25. Plaintiff is again wrong and raises an issue that was neither material to pretext nor accurate based on the record evidence. While the District Court may not have recited this argument in discussing Plaintiff's retaliation claim, it squarely addressed this argument of pretext elsewhere. The District Court specifically noted Plaintiff's claim that Hittle "falsely testified that [plaintiff] was not organizationally higher than [] Sobieranski," but again noted that it had no bearing on "Hittle's stated reason for not selecting plaintiff." JA325.

Plaintiff again has no rejoinder to this point or any argument as to how Sobieranski's organizational level was material, at all, to the selection decision. Furthermore, Plaintiff claims that he was "one organizational level above Mr. Sobieranski in the chain of command," Br. at 25, but he cites to his own markup of an organization chart, which actually shows that both he and Sobieranski were GS-14 employees and that Sobieranski did not report to Plaintiff. *See* JA260. In any event, this point was immaterial to the selection decision, and it has no legal relevance to the pretext inquiry.

### E. Hittle's December 2019 EEO Testimony Regarding Plaintiff's Qualifications Is Immaterial to His February 2018 Selection Decision.

Plaintiff next argues that "the district court did not address whether . . . Hittle's claim that he was unaware of Mr. Smith's job and qualifications—in order

43

to minimize them—raised an inference of retaliation." Br. at 26. Once again, Plaintiff misrepresents the District Court's opinion which, in addressing pretext, squarely noted Plaintiff's argument that Hittle allegedly "claimed he did not know [plaintiff]'s experience or even what he did in his job." JA324-325. And as with Plaintiff's many other arguments, the District Court noted it was legally irrelevant because it did not bear on "Hittle's stated reason for not selecting plaintiff." JA325. Once again, Plaintiff has no rejoinder to this point. At best, he cursorily states that Hittle's testimony at the EEOC hearing about Plaintiff's qualifications was "material to his decision." Br. at 28.

But Plaintiff offers no further explanation for why Hittle's December 2019 EEOC testimony—where, after having retired from the Marine Corps, JA183,[20] Hittle was asked to recall what Plaintiff did at TECD—bore at all on Hittle's February 2018 selection decision. That is because there is no record evidence even suggesting that it had any such bearing. The plain record evidence does not show that Hittle's *ex post* testimony in 2019 was in any way relevant or casted doubt on

---

[20] Plaintiff's claims that Hittle was engaged in some far reaching deception in minimizing Plaintiff's work at TECD are even more far-fetched when viewed in the context that Hittle was asked to testify in December 2019 after having retired in fall 2018 from the Marine Corps, JA183, and was being asked to recall the job responsibilities of a long former, subordinate/co-worker. A much simpler explanation for Hittle "waver[ing]" in his testimony is that Hittle was being asked to recall details from years prior for an employer that he no longer worked for.

Hittle's stated reason to pick Sobieranski for the Deputy Director position in 2018 based on Hittle's belief regarding Sobieranski's policy experience.

Moreover, Plaintiff's argument that "Hittle attempt[ed] to feign ignorance of "[Plaintiff]'s impressive qualifications" is internally incoherent. Br. at 26. Plaintiff himself cites to testimony by Hittle describing Plaintiff as "an essential point," and recognizing the value of Plaintiff's work at TECD. Br. at 27. Far from minimizing Plaintiff's qualifications or feigning ignorance, Hittle ultimately provided a commendatory synopsis of what Plaintiff did at TECD. Indeed, in excerpts of that same testimony conveniently missing from Plaintiff's appeal brief, Hittle commented on the "very broad mandate to do a great deal of work" that Plaintiff had. JA298. Moreover, the notion that Hittle ignored Plaintiff's qualifications is directly contrary to record evidence showing that Hittle rated Plaintiff "a very close second to Mr. Sobieranski" for the Deputy Director position. JA75. Regardless, this point is immaterial to the pretext inquiry.[21]

### F. Hittle's Recollection of a December 2017 Email at a December 2019 Hearing Is Immaterial to His February 2018 Selection Decision.

Finally, Plaintiff repeats the argument he made before the District Court that "a reasonable jury could find that . . . Hittle falsely denied that [Plaintiff]

---

[21] Plaintiff's citation to *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639 (4th Cir. 2002), *see* Br. at 28, is therefore not helpful as it discusses evaluating dishonesty "about a *material* fact." *Dennis*, 290 F.3d at 648 (emphasis added).

complained that he felt marginalized." Br. at 28; *see* JA154-155. Specifically,

Plaintiff claims that at the December 2019 EEOC hearing "Hittle tried to conceal

his knowledge of [Plaintiff]'s complaint [of marginalization in a December 2017 e-

mail] when asked [about this e-mail by] the administrative judge." Br. at 29.

Plaintiff then argues that "Hittle's knowledge of [Plaintiff's] protected activity is a

material fact," that should go to a jury. *Id.* It is doubtful whether Plaintiff's claims

of marginalization in response to a workplace question in December 2017

constitute "protected activity," particularly given that Plaintiff did not identify his

December 2017 correspondence as protected activity in his Complaint. *See* JA288.

More importantly though, Plaintiff has no explanation for why Hittle's recollection

of complaints of marginalization in December 2019 is material to the core issue of

pretext in this case: Hittle's stated reason in picking Sobieranski for the Deputy

Director position in February 2018. In fact, it is hard to conceive of how this after-

the-fact testimony about a completely different issue bears *at all* on the selection

decision.

It is also worth noting that Plaintiff's argument, once again, is incorrect on

the record evidence and is based on a selective cribbing of Hittle's testimony—

something that Plaintiff has done at every stage of this litigation. Plaintiff claims

that "Hittle tried to conceal his knowledge of [Plaintiff]'s complaint." Br. at 29.

Yet, a full review of Hittle's testimony in context shows that Hittle did not initially

46

recall a long prior email from December 2017 when asked about it *two years later*

without the document first being in front of him:

> JUDGE WOODHAM: From the time that you returned in October of
> 2017 through the date of your selection decision, did you take any steps
> to address the concerns of Mr. Smith that he was being marginalized?
>
> THE WITNESS: I didn't take any steps to do anything, Your Honor,
> because I didn't hear from him that he was being marginalized.
>
> JUDGE WOODHAM: Can somebody give him Page 178 and 179 --
> and 180, I'm sorry. Give him all three of those.
> . . .
>
> JUDGE WOODHAM: Yes, thank you. Tell me when you've had a
> chance to review those, Mr. Hittle.
>
> THE WITNESS: I apologize, Your Honor. Thank you for letting me
> read that.

JA117-118.

That testimony, when viewed in full, simply shows that Hittle did not

remember a long prior email until it was shown to him, and he then recognized it.

Plaintiff's attempts to contort Hittle's after-the-fact testimony to create some

appearance of deception or retaliatory animus is a long running theme in this

litigation, *see* JA286-287, but they are unavailing when viewing the record

evidence in total. And even if Hittle had lied about his recollection, Plaintiff's

focus on "minor discrepancies" and "wholly irrelevant" points in Hittle's

testimony still cannot show pretext as a matter of law as the District Court

correctly recognized in rejecting the very same arguments that Plaintiff now

proffers in this Court. *Hux*, 451 F.3d at 315.

## CONCLUSION

For the foregoing reasons, Acting Secretary Del Toro respectfully requests

that the Court affirm the District Court's grant of summary judgment in his favor.

Dated: December 21, 2022          Respectfully submitted,

                                  JESSICA D. ABER
                                  UNITED STATES ATTORNEY

                          *By*:_____/s/_____
                                  YURI S. FUCHS
                                  Assistant United States Attorney
                                  Office of the United States Attorney
                                  Justin W. Williams U.S. Attorney's Building
                                  2100 Jamieson Avenue
                                  Alexandria, Virginia 22314
                                  Tel:   (703) 299-3872
                                  Fax:   (703) 299-3983
                                  Email: yuri.fuchs@usdoj.gov

                                  *Counsel for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)

I hereby certify that this Brief of Defendant-Appellee complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 11,801 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Furthermore, I hereby certify that this Brief of Defendant-Appellee complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

_____ /s/ _____
YURI S. FUCHS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:     (703) 299-3872
Fax:     (703) 299-3983
Email: yuri.fuchs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, I electronically filed the

foregoing using the CM/ECF system, which will send a notification of electronic

filing to the following counsel of record:

Ellen K. Renaud
Alan Lescht & Associates, P.C.
1825 K Street, NW Suite 750
Washington, D.C. 20006
(202) 852-8483
Ellen.Renaud@leschtlaw.com

_____/s/_____
YURI S. FUCHS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3872
Fax:    (703) 299-3983
Email: yuri.fuchs@usdoj.gov